STATE OF NORTH CAROLINA v. IRWIN THOMAS STEVENSON

No. 465A89

(Filed 26 July 1990)

1. **Homicide § 30 (NCI3d)— first degree murder—submission of second degree murder not required by evidence**

    The trial court in a first degree murder case did not err in failing to submit second degree murder as a possible verdict where there was no evidence to support a reasonable finding by the jury that defendant killed his victim but did so without premeditation and deliberation, as the evidence tended to show that defendant repeatedly threatened the victim on the day she was killed; he then concealed a small pistol in one of his pockets and waited in the victim's apartment until her arrival; when the victim arrived at the apartment, defendant had a brief argument with her; as she attempted to leave, defendant pulled out his gun and fired two shots at the back of her head; and the victim died as a result of a gunshot wound to the back of her head.

    **Am Jur 2d, Homicide §§ 525, 526, 529.**

2. **Homicide § 25.2 (NCI3d)— premeditation and deliberation— inference from circumstances—lack of provocation—instruction proper**

    The trial court's instruction that premeditation and deliberation could "be proved by circumstances from which they [could] be inferred, such as the lack of provocation by [the victim]," could not be construed as an expression of opinion by the court that any of the circumstances had been proved; moreover, the challenged instruction was justified because the evidence at trial tended to show that the victim did not provoke defendant.

    **Am Jur 2d, Homicide § 501.**

3. **Homicide § 25 (NCI3d)— first degree murder—final mandate— failure to instruct on intent to kill—no plain error**

    The trial court did not commit plain error by failing during its final mandate to instruct that, in order to convict, the jury must find that defendant intended to kill the victim, since the trial court's failure so to instruct did not create a conflict

in the instructions included within the charge; the trial court properly instructed the jury concerning all the elements of first degree murder during its charge, but failed to restate the intent to kill in the final mandate; and the jury probably would not have reached a different verdict absent the error, as the evidence that the killing in this case was first degree murder was overwhelming and not seriously contested by defendant.

**Am Jur 2d, Homicide §§ 498, 499.**

APPEAL of right pursuant to N.C.G.S. § 7A-27 from judgment entered by *Rousseau, J.,* in the Superior Court, GUILFORD County, 2 June 1989, sentencing the defendant to life imprisonment for murder in the first degree. Heard in the Supreme Court on 15 March 1990.

*Lacy H. Thornburg, Attorney General, by David Roy Blackwell, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice.

The defendant, Irwin Thomas Stevenson, was tried in a non-capital trial upon a true bill of indictment charging him with the murder of Myrna Cole. The State's evidence at trial tended to show that the defendant had a romantic relationship with Myrna Cole. Sherrie Cole, the victim's sister, testified that the defendant was possessive of Myrna. Periodically, the defendant and Myrna argued about where she had been and with whom.

Robert Royster testified that he and the defendant drove around town drinking beer and looking for Myrna Cole on 10 January 1989. The defendant told Royster he was "sick and tired of Myrna doing him wrong and getting over on him." The defendant also stated he had something for her. Royster observed a small derringer in the defendant's possession. Failing to find Myrna Cole, the two men went to her apartment around 8:00 p.m. in order to wait for her and drink some more beer. The defendant used a key to enter the apartment. After about an hour, Sherrie Cole arrived. The defendant argued with Sherrie about Myrna. He was

mad and demanded to know where Myrna was. In order to get rid of the defendant, Sherrie lied saying that Myrna was at the Motel 6. Afterwards, the defendant left.

The defendant returned to Myrna's apartment about thirty minutes later and told Sherrie that he would wait all night for Myrna. He made a statement to the effect that if Myrna was out partying with another man, it would be her last time.

Sherrie Cole testified that later, when Myrna came home, the defendant got off the couch and began an argument with Myrna. Then Myrna turned around and ran out the door. The defendant followed, and Sherrie observed him pulling a gun out of his pocket. He fired the gun twice, shooting Myrna once in the back of her head. Myrna fell to the porch immediately. A later autopsy revealed that Myrna Cole died from a single gunshot wound to the back of her head.

The defendant told Sherrie not to move Myrna and then walked away from the apartment. Because there was no telephone in the apartment, Sherrie then left to seek help.

Further evidence for the State tended to show that Michael Canada and Michael Robertson gave Myrna Cole a ride to her apartment around 11:00 p.m. on 10 January 1989. Canada testified that he walked Myrna to the door. As Canada walked away, he heard the defendant arguing with Myrna. Canada testified that he then heard gunfire. When he looked around, Myrna was lying on the porch and the defendant was pointing the gun at him; whereupon, Canada left.

Tyrone Maynard testified that he was upstairs in Myrna's apartment on the evening 10 January 1989 when he heard the defendant arguing with Myrna. Hearing two gunshots, Maynard looked downstairs and saw the defendant with a gun. Maynard helped Sherrie drag Myrna inside and then ran to call for help. After calling for help, Maynard observed the defendant walking up the street toward a van. Maynard approached the defendant and asked him why he had shot Myrna, but the defendant denied shooting her. Maynard then grabbed the defendant in order to hold him for the police. Doug Patrick assisted Maynard by removing the gun from the defendant's pocket.

Responding to a call at 12:40 a.m. on 11 January 1989, Greensboro Police Officer J. G. DeYoung found Tyrone Maynard

and another person holding the defendant on the ground near Myrna Cole's apartment. DeYoung testified that he recovered a derringer at that time which contained two empty shell casings. Thereafter, DeYoung took the defendant to the police station. En route, the defendant told DeYoung that he did not shoot Myrna Cole and that he had been walking to his van when he was jumped by several black men and robbed.

At trial, the defendant denied shooting Myrna Cole. He testified that he was taking Tylenol No. 3 and other medications for diabetes on 10 January 1989. In response to a call from Myrna, he agreed to pick her up at her apartment. As she was not at the apartment when he arrived, he decided to wait on the couch. Although there were several people in the apartment drinking and using cocaine, the medication he had taken allowed him to fall asleep. He was awakened by people screaming that Myrna had been shot. When he learned that no one had called for help, the defendant left the apartment to do so. The defendant testified that while he was on his way to get help, he was assaulted and robbed by Tyrone Maynard and others.

Dr. David Sillman testified that he had prescribed Tylenol No. 3 and phenobarbital for the defendant for arthritis and seizures. Dr. Sillman testified that this medication could cause drowsiness.

The jury found the defendant guilty of first-degree murder on the theory that the killing of Myrna Cole was premeditated and deliberate. The District Attorney having stipulated that the State had no evidence that would tend to show aggravating circumstances, the trial court sentenced the defendant to. life in prison.

Additional evidence and other matters relevant to the defendant's specific assignments of error are discussed in other parts of this opinion.

[1]    On appeal, the defendant assigns error contending that the trial court committed reversible error by failing to submit a possible verdict on the lesser included offense of second-degree murder for the jury's consideration. The trial court submitted two possible verdicts for the jury to consider: guilty of first-degree murder and not guilty. The defendant argues that the evidence also required an instruction on and submission of a possible verdict finding him guilty of second-degree murder. We disagree.

STATE v. STEVENSON

[327 N.C. 259 (1990)]

While second-degree murder is a lesser included offense of premeditated and deliberate first-degree murder, the trial court was not required to submit a verdict on that lesser included offense unless it was supported by evidence. *State v. Strickland*, 307 N.C. 274, 298 S.E.2d 645 (1983). The mere fact that the jury could selectively believe part of the State's evidence and disbelieve part of it did not entitle the defendant to an instruction on a lesser included offense. *State v. Brewer*, 325 N.C. 550, 576, 386 S.E.2d 569, 584 (1989). If, however, there was any positive evidence tending to support the lesser included offense of second-degree murder, then it was the trial court's duty to submit a possible verdict for that lesser included offense after appropriate instructions.

The defendant argues that the evidence at trial would have supported a reasonable finding by the jury that he shot the victim without a specific intent to kill her. However, the State's evidence tended to show that the defendant repeatedly threatened the victim on the day she was killed. He then concealed a small pistol in one of his pockets and waited in the victim's apartment until her arrival. When the victim arrived at the apartment, the defendant had a brief argument with her. As she attempted to leave, the defendant pulled out his gun and fired two shots at the back of her head. The victim died as a result of a gunshot wound to the back of her head. Such evidence unequivocally tends to show an intentional killing with malice, premeditation and deliberation. The defendant testified at trial that he did not shoot the victim at all. We find no evidence in the record to support a reasonable finding by the jury that the defendant killed Myrna Cole, but did so without premeditation and deliberation. Therefore, the evidence would not have supported a verdict finding the defendant guilty of second-degree murder, and the trial court did not err in failing to submit such a possible verdict to the jury. This assignment of error is without merit.

[2] By his next assignment of error, the defendant argues that the trial court erred when it instructed the jury as follows:

Now neither premeditation nor deliberation are usually susceptible of direct proof. They may be proved by circumstances from which they may be inferred, such as the lack of provocation by [Myrna] Cole, the conduct of the defendant before, during, and after the killing, threats and declarations of the

defendant, and the manner in which or means by which the killing was done.

The defendant argues that this instruction amounted to error requiring a new trial "[b]ecause (1) the evidence failed to disclose a lack of provocation by the victim, and (2) this instruction could be understood by the jury as an opinion . . . of the court that the absence of provocation in fact had been proven. . . ." We do not agree.

In the recent case of *State v. Cummings*, we noted that "[t]he elements listed [in an instruction identical to the one complained of here] are merely examples of circumstances which, if found, the jury could use to infer premeditation and deliberation." *Cummings*, 326 N.C. 298, 315, 389 S.E.2d 66, 76 (1990). Further, in *Cummings* we held that it is not required that each of the circumstances listed by the trial court as examples in such an instruction be proven beyond a reasonable doubt before the jury may infer premeditation and deliberation. *Id.* Therefore, the trial court's mere recital of such examples cannot be construed as an expression of an opinion that any of them have been proven.

Additionally, from our review of the record, we conclude that the challenged instruction was justified because the evidence at trial tended to show that the victim did not provoke the defendant. The evidence presented at trial tended to show that the armed defendant waited in Myrna Cole's apartment until she returned. Upon her return, the defendant verbally accosted her. After a brief argument, Myrna Cole turned to leave the apartment. The defendant followed her out the door and shot her in the back of the head. This brief argument between the defendant and the victim "can by no means be said to have been adequate to provoke a killing in the heat of passion or one motivated by any other mens rea less inculpatory than premeditation and deliberation." *State v. Artis*, 325 N.C. 278, 310, 384 S.E.2d 470, 488 (1989), *judgment vacated on other grounds*, --- U.S. ---, 108 L. Ed. 2d 604 (1990). We conclude that the trial court's instruction concerning lack of provocation was supported by the evidence. This assignment of error is without merit.

[3] By his final assignment of error, the defendant argues that the trial court committed plain error by failing during its final mandate to instruct the jury on the intent to kill required to support a murder conviction. In the body of the jury charge, the

trial court correctly instructed that, to return a verdict of guilty of first-degree murder, the jury must find that (1) the defendant intentionally and with malice shot the victim with a deadly weapon, (2) the defendant's act was a proximate cause of the victim's death, (3) the defendant *intended to kill* the victim, and (4) the defendant acted with premeditation and deliberation. During its final mandate to the jury, the trial court repeated these instructions but omitted the requirement that, in order to convict, the jury must find that the defendant intended to kill the victim.

Relying on cases such as *State v. Harris*, 289 N.C. 275, 221 S.E.2d 343 (1976), the defendant contends that the omission of the element of a specific intent to kill from the trial court's final mandate was plain error which requires a new trial. Because the defendant did not object to this instruction at trial, he must show that the trial court committed plain error in this regard. *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378 (1983). The test for plain error is whether absent the omission the jury probably would have returned a different verdict. *State v. Joplin*, 318 N.C. 126, 347 S.E.2d 421 (1986); *State v. Walker*, 316 N.C. 33, 340 S.E.2d 80 (1986). In reviewing jury instructions for such error, the instructions must be considered in their entirety. *State v. Poole*, 305 N.C. 308, 289 S.E.2d 335 (1982).

*State v. Harris*, relied upon by the defendant, involved a situation in which the trial court gave two instructions which directly contradicted each other as to whether the defendant or the State had the burden of proof on an issue. *Harris*, 289 N.C. at 279, 221 S.E.2d at 346. Faced with *conflicting* instructions, we held that "where the court charges correctly at one point and incorrectly at another, a new trial is necessary because the jury may have acted upon the incorrect part." *Id.* at 280, 221 S.E.2d at 347. In the present case, however, the trial court's failure in the final mandate to restate the requirement that the jury must find an intent to kill before convicting did not create a conflict in the instructions included within the charge. Our review of the jury instructions in their entirety reveals that the trial court properly instructed the jury concerning all the elements of first-degree murder during its charge but failed to restate the intent to kill element at one point, albeit during the final mandate. Further, at several points, and again in the final mandate, the trial court instructed the jury that to convict they must find that the defendant killed the victim with malice after premeditation and deliberation. Hence,

the trial court's charge in this case was not internally contradictory, but was, at most, incomplete at one important point.

Even assuming *arguendo* that the trial court erred in its charge, we are not persuaded that absent the error the jury probably would have reached a different verdict. The evidence for the State at trial tended to show that after the defendant threatened Myrna Cole, he waited with a gun in his pocket most of the day for her to return to her apartment. When she arrived, he shot and killed her as she ran away from him. Evidence that the killing in this case was first-degree murder was overwhelming and not seriously contested by the defendant; he simply testified and contended that he had nothing at all to do with the murder of the victim. Under these circumstances, we are convinced that the trial court's inadvertent omission of the intent to kill element from its final mandate did not rise to the level of plain error. *See generally State v. Walker*, 316 N.C. 33, 340 S.E.2d 80 (1986). Therefore, this assignment of error is without merit.

For the reasons stated, we hold that the trial of the defendant was free of reversible error.

No error.