STATE OF NORTH CAROLINA v. CHRISTOPHER LUNORE ROSEBORO

No. 156A94

(Filed 6 September 1996)

**1. Jury § 141 (NCI4th)— capital trial—jury voir dire—parole eligibility questions excluded**

Defendant was not denied due process by the trial court's refusal to allow defendant, who would be eligible for parole if given a life sentence, to question prospective jurors in a capital

STATE v. ROSEBORO

[344 N.C. 364 (1996)]

trial about their understanding of parole eligibility. The amendment to N.C.G.S. § 15A-2002 which requires the trial court to instruct the jury during a capital sentencing proceeding "that a sentence of life imprisonment means a sentence of life without parole" is to be applied prospectively after 1 October 1994 and was not applicable to defendant's trial where defendant committed the murder in 1992 and his trial began in February 1994.

**Am Jur 2d, Jury §§ 193, 199, 205, 206, 208.**

**Right of counsel in criminal case personally to conduct the voir dire examination of prospective jurors. 73 ALR2d 1187.**

2. **Criminal Law § 1322 (NCI4th)— meaning of life imprisonment—questions by prospective jurors—response by court**

Where two prospective jurors in a capital trial asked the trial court the meaning of life in prison, the trial court properly responded that "for the purposes of this trial, life imprisonment means life in prison."

**Am Jur 2d, Trial §§ 1118, 1443, 1448.**

**Prejudicial effect of statement or instruction of court as to possibility of parole or pardon. 12 ALR3d 832.**

**Jury's discussion of parole law as ground for reversal or new trial. 21 ALR4th 420.**

**Prejudicial effect of statement by prosecutor that verdict, recommendation of punishment, or other finding by jury is subject to review or correction by other authorities. 10 ALR5th 700.**

3. **Evidence and Witnesses §§ 410, 663 (NCI4th)— conjectural identification testimony—motion to strike—absence of ruling**

Assuming that the trial court erred in failing to rule on defendant's motion to strike conjectural identification testimony placing defendant at a topless bar the night of a murder, defendant was not prejudiced where the trial court sustained defendant's objection to the testimony in the jury's presence, and both defendant and another witness testified that the two of them had walked past the topless bar on the night of the murder.

**Am Jur 2d, Evidence § 367; Trial § 163.**

**4. Appeal and Error § 504 (NCI4th)— limitation of evidence to corroboration—invited error**

Where defendant unequivocally agreed that he offered an accomplice's out-of-court statements to a witness for purposes of corroboration, the trial court's limitation of the jury's consideration of the testimony to corroboration was invited error from which defendant cannot gain relief. Even if there was no invited error, defendant was not prejudiced where the same testimony was received from the witness on redirect examination without any limiting instruction. N.C.G.S. § 15A-1443(c).

**Am Jur 2d, Appellate Review §§ 749-752, 754.**

**5. Burglary and Unlawful Breakings § 150 (NCI4th)— first-degree burglary—instructions on occupancy—no plain error**

Where all the evidence presented by the State and by defendant in a first-degree burglary prosecution showed that defendant was unaware of his codefendant's initial breaking and entering of the victim's apartment, and defendant disputed only whether the victim was alive at the time he subsequently broke and entered the apartment with the codefendant to take the victim's television set, the trial court's instruction which appeared to require the jury to find that defendant participated in the initial breaking and entering with the codefendant in order to find that the apartment was occupied was favorable to defendant and not plain error. Moreover, defendant was not prejudiced by such instruction where the jury was clearly instructed that if the victim was not alive at the time defendant broke and entered her apartment, it could not find that the apartment was occupied.

**Am Jur 2d, Burglary §§ 67-69.**

**6. Criminal Law §§ 412, 463 (NCI4th)— rape of murder victim—time of death—opening statement and closing argument—supporting evidence**

The prosecutor's opening statement that the pathologist's opinion would be that a murder victim "died right as the rape began or that she died during the rape," and his closing argument that if the victim was dead before the rape occurred, she had not been dead longer than five minutes, did not misconstrue the pathologist's testimony regarding the time of the victim's death as it related to the rape and was not improper where the pathologist

testified that, based on the small amount of blood present, the victim "was either dead at the time of the rape or died soon after the rape began," and that while he could not give an exact time frame, if the victim died "just before the rape" it would have been within a "minute, five minutes."

**Am Jur 2d, Trial §§ 632-639.**

**7. Criminal Law § 465 (NCI4th)— prosecutor's closing argument—definition of reasonable doubt—error cured by instructions**

Defendant's due process rights were not violated by any error in the prosecutor's definition of reasonable doubt when he stated in his closing argument that "too often jurors say, we know he's guilty, but the State didn't prove it" and that "If you know, then it was proved to you. That's beyond a reasonable doubt" where the trial court correctly instructed the jury as to reasonable doubt after the closing arguments.

**Am Jur 2d, Trial §§ 632-639.**

**8. Larceny § 164 (NCI4th)— felonious larceny—omission of element in body of charge—inclusion in final mandate—no plain error**

The trial court's omission of the fifth element of felonious larceny (knowledge by defendant that he was not entitled to take the property) in the body of the charge did not create an internal conflict in the instructions when the court fully instructed as to all six elements of felonious larceny in the final mandate and was not plain error.

**Am Jur 2d, Larceny § 180.**

**9. Criminal Law § 1323 (NCI4th)— capital sentencing—statutory mitigating circumstances—mitigating weight—erroneous instruction**

The trial court erred by instructing the jurors in a capital sentencing proceeding that they could elect to give a statutory mitigating circumstance no mitigating weight when it informed the jurors that if none of them "found the [statutory mitigating] circumstance to be mitigating," they would so indicate by instructing their foreman to write "no" in the space provided.

**Am Jur 2d, Trial §§ 840, 841, 1448, 1449.**

**Instructions to jury: Sympathy to accused as appropriate factor in jury consideration. 72 ALR3d 842.**

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Gaines, J., at the 28 February 1994 Criminal Session of Superior Court, Gaston County, upon a jury verdict finding defendant guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments was allowed by this Court 26 May 1995. Heard in the Supreme Court 11 December 1995.

*Michael F. Easley, Attorney General, by Tiare B. Smiley, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant.*

LAKE, Justice.

Defendant was tried capitally for the first-degree murder of Martha Edwards. The jury returned a verdict of guilty of first-degree murder on the theory of premeditation and deliberation and under the felony murder doctrine. The jury additionally returned verdicts of guilty of first-degree burglary, first-degree rape, felonious larceny and possession of stolen property. Following a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended a sentence of death, and the trial court sentenced defendant accordingly. The trial court further sentenced defendant to consecutive terms of life imprisonment for the rape conviction, fourteen years for the burglary conviction and three years for the felonious larceny conviction. Judgment was arrested as to defendant's possession of stolen property conviction.

The State's evidence at trial tended to show the following. Roger Bell lived with defendant in a one-bedroom apartment on West Second Avenue beside the victim's apartment. On the evening of 13 March 1992, Bell and defendant were both at home, and Bell was in need of money to pay rent. He noticed the victim's apartment was dark, so he removed the window screen, reached inside and took two ceramic vases and a telephone. Bell brought these items to the apartment he shared with defendant and hid them. Bell then went back to the victim's apartment and crawled in through the window. As he looked for other items to take, he heard someone snoring and dis-

covered the victim asleep in her bed. This unnerved Bell, as he had previously thought no one was at home, so he unlocked the kitchen door and left. Bell explained to defendant what had happened, and together, they decided to go back to the victim's apartment and take a floor-model television set Bell had seen. They entered the apartment through the kitchen door and carried the victim's television back to their apartment. Upon returning again to the victim's apartment to wipe away their fingerprints, Bell noticed defendant walking toward the bedroom. Bell told defendant they needed to leave, but defendant "shushed" him. Bell left defendant in the apartment and went home; he fell asleep before defendant returned.

In the following days, defendant showed Bell a microwave, a radio, silverware and a pocketbook that he had taken from the victim's apartment after Bell left.

Defendant testified on his own behalf that on the night of 13 March 1992, he smoked crack cocaine and went to bed. He woke up later that evening and saw Bell carrying two ceramic vases and a telephone into their apartment. Defendant asked Bell what he was doing, but Bell told defendant not to worry about anything. Bell left and came back again with a microwave and a radio. This time, defendant asked Bell how he was able to take these things from someone's house without waking them up. Bell again told defendant not to worry about it. Bell left once more, and while he was gone, defendant smoked more crack cocaine. When Bell returned this time, he had a pocketbook and silverware. Bell gave defendant a twenty-dollar bill he found in the pocketbook, and together, they walked to Cherry Street so defendant could buy some more cocaine. On the way, they passed a topless bar known as "Leather and Lace," and Bell tossed the pocketbook into the bed of a blue truck in the parking lot.

Defendant decided to go with Bell to the victim's apartment and take the floor-model television set. When they returned to wipe away any fingerprints they might have left behind, defendant went into the victim's bedroom. The victim had a pillow over her face, and defendant thought she was dead. Defendant testified he then decided to have sex with the victim.

An autopsy of the victim revealed the presence of several recent bruises on her arms, nose and lips. Additionally, her shoulder bone was dislocated, and fluid was found in her lungs. The pathologist indicated that in his opinion, the cause of death was consistent with smothering. Based upon fluid and blood present in the vagina and lac-

erations on the vaginal wall, the pathologist concluded the victim had been raped. In the pathologist's opinion, because of the small amount of blood present in the vagina, the victim died just before she was raped or just after the rape began. According to DNA test results, the DNA banding patterns from the male fraction of the rectal and vaginal swabs taken from the victim were a visual match to the DNA banding patterns of the defendant; this visual match was confirmed by computer analysis. Bell's DNA banding patterns were a nonmatch. The probability of another unrelated individual having the same DNA banding patterns as defendant's is approximately 1 in 3.5 billion for the North Carolina black population. Other evidence introduced at trial will be discussed at later points in this opinion where relevant.

[1] In his first assignment of error, defendant contends he was denied due process when the trial court refused defendant's request to apply retroactively the 1995 legislative changes contained in N.C.G.S. § 15A-2002, refusing to allow defendant to question prospective jurors about their understanding of parole eligibility.

This Court has consistently held that prospective jurors should not be questioned about their understanding regarding parole eligibility during *voir dire*. *State v. Lynch*, 340 N.C. 435, 459 S.E.2d 679 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 558 (1996). "[E]vidence about parole eligibility is not relevant in a capital sentencing proceeding because it does not reveal anything about defendant's character or record or about any circumstances of the offense." *State v. Payne*, 337 N.C. 505, 516, 448 S.E.2d 93, 99 (1994), *cert. denied*, —— U.S.——, 131 L. Ed. 2d 292 (1995). We have further held that *Simmons v. South Carolina*, 512 U.S. 154, 129 L. Ed. 2d 133 (1994), "does not affect our position on this issue when, as here, the defendant remains eligible for parole if given a life sentence." *State v. Miller*, 339 N.C. 663, 676, 455 S.E.2d 137, 144, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 169 (1995); *accord State v. Conaway*, 339 N.C. 487, 453 S.E.2d 824, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 153 (1995). Given our repeated holdings on this issue, it was not error for the trial court to refuse to allow defendant, who was clearly eligible for parole, to question prospective jurors regarding parole eligibility.

Defendant correctly notes that our legislature has amended N.C.G.S. § 15A-2002 to now require a trial court to instruct a jury during a capital sentencing proceeding "that a sentence of life imprisonment means a sentence of life without parole." N.C.G.S. § 15A-2002 (Supp. 1995). However, in *State v. Skipper*, 337 N.C. 1, 446 S.E.2d 252

(1994), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 895 (1995), this Court recognized that the effective date for this legislative change was 1 October 1994 and that "the General Assembly has decided that the legislation is to be applied prospectively." *Id.* at 43, 446 S.E.2d at 275; *accord State v. DeCastro,* 342 N.C. 667, 467 S.E.2d 653 (1996). In the present case, defendant committed his crimes in 1992, and his trial began in February 1994. Thus, the legislative changes contained in N.C.G.S. § 15A-2002, deemed only to have prospective force, are inapplicable to defendant, and the trial court did not err in refusing to apply the statute retroactively. Defendant has not been denied due process, and we hereby overrule this assignment of error.

[2] In a related assignment of error, defendant contends that the trial court erred in failing to properly respond to questions from prospective jurors regarding the meaning of a life sentence and parole. During jury selection, two prospective jurors asked the trial court the meaning of life in prison. The trial court responded to both prospective jurors as follows: "For the purposes of this trial, life imprisonment means life in prison." Defendant argues that the trial court's response was "untruthful," fundamentally unfair and amounted to a denial of due process.

Should a juror raise the question of parole eligibility, we have held that the trial court is to instruct the juror that he or she is to assume that life imprisonment means imprisonment for life. *State v. Conner,* 241 N.C. 468, 85 S.E.2d 584 (1955). In the present case, the trial court instructed both prospective jurors correctly under the applicable laws of this state. Defendant advances no persuasive reason for us to reverse our prior holdings with respect to this issue, and this assignment of error is without merit and overruled.

[3] In his next assignment of error, defendant contends that the trial court erred by failing to sustain defendant's motion to strike vague and conjectural identification testimony placing defendant at a topless bar the night of the murder. Mark Thompson, a bouncer at Leather and Lace, testified that during the evening hours of 13 March 1992 or the early morning hours of 14 March 1992, he "could have swore [sic] . . . [defendant] would have been inside the bar." Defendant objected, and the trial court sustained defendant's objection. Defendant then made a motion to strike, and the trial court asked the jury to leave the courtroom. After hearing *voir dire* testimony, the trial court again sustained defendant's objection to the identification testimony on the grounds that it was conjectural and,

therefore, had no probative value. The jury was escorted back into the courtroom, and testimony continued without the trial court ruling on defendant's motion to strike. Defendant now argues the trial court's failure to rule on the motion to strike amounted to prejudicial error requiring a new trial.

Assuming, *arguendo*, the trial court erred in failing to rule on defendant's motion to strike, we nevertheless conclude that defendant was not prejudiced. The record reveals that by defendant's own testimony, he and Roger Bell walked past Leather and Lace on the night of the murder; Roger Bell also testified that the two walked past Leather and Lace on the night of the murder. This testimony, coupled with the trial court's sustaining of defendant's objection in the jury's presence, convinces us that there is no reasonable possibility that a different result would have been reached at trial had the trial court granted defendant's motion to strike. N.C.G.S. § 15A-1443(a) (1988). Accordingly, this assignment of error is overruled.

[4] By another assignment of error, defendant contends the trial court committed plain error by limiting to corroborative purposes defense witness Charles "Peanut" Damron's testimony regarding out-of-court statements made by Bell. Defendant argues that the out-of-court statements were only corroborative in the broadest sense of the word and that the statements were more properly relevant as substantive evidence and for impeachment purposes. The following occurred at trial:

> Q. All right. What did Roger Bell tell you about breaking in— about going into the home?
>
>     . . . .
>
> THE COURT: . . . This evidence is offered for the purpose of corroborating?
>
> [DEFENSE COUNSEL]: Yes, sir, it is. Yes, sir.

Following this exchange, the trial court instructed the jury it was to consider Damron's testimony only for corroborative purposes. Damron then testified that Bell told him that it was Bell, and not defendant, who had taken the victim's pocketbook and had found twenty dollars inside.

Defendant contends on appeal that because the out-of-court statements contradict Bell's in-court testimony that it was the defendant who stole the victim's pocketbook, Damron's testimony was

STATE v. ROSEBORO

[344 N.C. 364 (1996)]

admissible to impeach Bell and, therefore, demonstrate that Bell was not credible as a witness. Defendant, citing *Green v. Georgia*, 442 U.S. 95, 60 L. Ed. 2d 738 (1979), and *Chambers v. Mississippi*, 410 U.S. 284, 35 L. Ed. 2d 297 (1973), argues that although Damron's testimony was technically hearsay, state evidentiary rules should not be applied mechanistically to bar evidence relevant to critical issues and, therefore, proposes that Damron's testimony regarding Bell's out-of-court statements was admissible as substantive evidence.

As noted above, defendant unequivocally agreed that he offered Damron's testimony for purposes of corroboration. Therefore, the trial court's limitation of the testimony's use by the jury was invited error from which defendant cannot gain relief. N.C.G.S. § 15A-1443(c) ("A defendant is not prejudiced . . . by error resulting from his own conduct."). Even assuming, *arguendo*, there was no invited error, our review of the record reveals that during Damron's redirect examination, Damron again testified that Bell told him Bell stole the pocketbook and found twenty dollars inside. This testimony was received without any type of limiting instruction. As Bell's out-of-court statements were admitted into evidence twice, once with a limiting instruction and once without a limiting instruction, we conclude defendant was not prejudiced as there is no reasonable possibility that had the limiting instruction not been given, a different result would have been reached at trial. N.C.G.S. § 15A-1443(a). This assignment of error is hereby overruled.

[5] In his next assignment of error, defendant argues the trial court committed plain error in its jury instructions regarding burglary. The trial court correctly instructed the jury that in order to find defendant guilty of first-degree burglary, it must find beyond a reasonable doubt that defendant broke and entered the occupied dwelling apartment of another without her consent in the nighttime with the intent to commit the felony of larceny. With regard to the requirement that the dwelling apartment be occupied, the trial court further instructed as follows:

> Now *if the apartment was occupied at the time Bell initially broke and entered and the defendant was acting in concert with Bell in the burglary at the time he entered* . . . the apartment . . . and the breaking and entering by Bell and the defendant were joined by time and circumstances as to be part of one continuous transaction, *then the building would be considered occupied* at the time the defendant . . . broke and entered the building.

> If you do not so find . . . or *if you find that Mrs. Edwards was dead at the time the defendant . . . entered the apartment and that he was not acting in concert with Bell at the initial breaking or entering, then the apartment would not have been occupied* at the time of the entry. If Mrs. [Edwards was] alive at the time of the entry . . . the building would be occupied.

(Emphasis added.)

Defendant failed to object to these instructions and, therefore, asks this Court to review the instructions for plain error. Specifically, defendant argues the instructions are susceptible to two erroneous interpretations. First, defendant contends that the jury could have understood the instructions to require a finding that defendant was acting in concert with Bell when Bell *initially* broke and entered the victim's apartment. Defendant argues that the evidence does not support this interpretation of the instructions, as all the evidence shows that defendant was unaware of Bell's initial breaking and entering of the victim's apartment until after the fact, and thus, defendant could not have acted in concert with Bell at that time. Second, defendant contends that the jury could have understood the instructions to require that it hold defendant accountable for Bell's initial breaking and entering if defendant *later* acted in concert with Bell. This interpretation of the instructions, defendant argues, amounts to an inaccurate statement of the law, and defendant cannot be held responsible for Bell's initial breaking and entering because defendant joined the criminal enterprise after Bell's initial breaking and entering.

In order for an instructional error to amount to plain error, the error must be "so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him." *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993). Stated differently, the error must be "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).

From the record in the case *sub judice*, we cannot say that the trial court's instructions were actually prejudicial to defendant such that they "quite probably tilted the scales against him." *Collins*, 334 N.C. at 62, 431 S.E.2d at 193. Any confusion resulting from the instructions was actually favorable to defendant, as the instructions appeared to require the jury to find that defendant participated in the

STATE v. ROSEBORO

[344 N.C. 364 (1996)]

initial breaking and entering with Bell *in order to find the apartment occupied.* As defendant correctly points out, all the evidence presented by the State and defendant demonstrates that defendant was completely unaware of Bell's initial breaking and entering. Thus, the instructions, clearly favorable to defendant, cannot amount to plain error. *See State v. Harris,* 315 N.C. 556, 340 S.E.2d 383 (1986) (a mistaken instruction that was actually favorable to defendant did not amount to plain error as defendant was not prejudiced). Moreover, defendant does not dispute his breaking and entering the apartment with Bell to take the victim's television set; rather, the defendant disputes only whether the victim was alive when he broke and entered her apartment to take her television set. The jury was clearly instructed that if the victim was not alive at the time *defendant* broke and entered the victim's apartment, then it could not find the apartment occupied. *Cf. State v. Campbell,* 332 N.C. 116, 122, 418 S.E.2d 476, 479 (1992) ("[F]or purposes of the arson statute, a dwelling is 'occupied' if the interval between the mortal blow and the arson is short, and the murder and arson constitute parts of a continuous transaction."); *State v. Pakulski,* 319 N.C. 562, 572, 356 S.E.2d 319, 325 (1987) ("A homicide victim is still a 'person,' within the meaning of a robbery statute, when the interval between the fatal blow and the taking of property is short."). Because the alleged error was in defendant's favor and could not have been prejudicial, we decline to apply the plain error rule, and this assignment of error is overruled.

[6] Next, defendant argues that the trial court erred by denying defendant's objections to the prosecutor's opening statement and closing argument. Defendant first contends that the prosecutor misconstrued the pathologist's testimony regarding the time of the victim's death as it related to the rape.

In his opening statement, the prosecutor stated that the pathologist would be able to arrive at an approximate time period for the victim's death in relation to the rape and that the pathologist's opinion would be that the victim "died right as the rape began or that she died during the rape." In his closing argument, the prosecutor argued that if the victim was dead before the rape occurred, she had not been dead longer than five minutes.

With respect to opening statements, we have stated:

"While the exact scope and extent of an opening statement rest largely in the discretion of the trial judge, we believe the proper function of an opening statement is to allow the party to

inform the court and jury of the nature of his case and the evidence he plans to offer in support of it."

*State v. Paige*, 316 N.C. 630, 648, 343 S.E.2d 848, 859 (1986) (quoting *State v. Elliott*, 69 N.C. App. 89, 93, 316 S.E.2d 632, 636, *disc. rev. denied and appeal dismissed*, 311 N.C. 765, 321 S.E.2d 148 (1984)). We have further stated that with regard to closing arguments, the arguments of counsel rest within the sound discretion of the trial court, and in the argument of hotly contested cases, counsel will be granted wide latitude. *State v. Goode*, 341 N.C. 513, 461 S.E.2d 631 (1995). Counsel may properly argue the facts in evidence as well as any reasonable inferences which can be drawn therefrom. *Id.* Based upon our review of the record, we cannot say the prosecutor made an improper opening statement or closing argument.

The record reveals the pathologist testified that based on the small amount of blood present, the victim "was either dead at the time of the rape or died soon after the rape began." Further, the pathologist testified that while he could not give an exact time frame, if the victim died "just before the rape," it would have been within a "minute, five minutes." The prosecutor's opening statement and closing argument in this regard were clearly in line with the testimony as presented to the jury and, therefore, were not improper. The trial court did not err in denying defendant's objections based thereon.

**[7]** Defendant additionally contends that the prosecutor misstated the law on reasonable doubt during his closing argument. The prosecutor argued to the jury that with regard to the concept of reasonable doubt, "too often jurors say, we know he's guilty, but the State didn't prove it." The trial court overruled defendant's objection. The prosecutor then continued, arguing, "If you know, then it was proved to you. That's beyond a reasonable doubt." Defendant did not object to this argument. Defendant proposes that the prosecutor's definition of reasonable doubt in the present case is much like the jury instruction found erroneous in *Cage v. Louisiana*, 498 U.S. 39, 112 L. Ed. 2d 339 (1990) (per curiam), *disapproved as to standard of review in Estelle v. McGuire*, 502 U.S. 62, 116 L. Ed 2d 385 (1991). In *Cage*, the United States Supreme Court held that a jury instruction defining reasonable doubt as "an actual substantial doubt" or a "grave uncertainty" suggested a higher degree of doubt than that required for acquittal. Those phrases, when considered with the instruction's reference to "moral certainty" rather than "evidentiary certainty," could have allowed the jury to find the defendant guilty "based on a degree of proof below

that required by the Due Process Clause." *Id.* at 41, 112 L. Ed. 2d at 342.

We conclude, however, that *Cage* is inapplicable to the present case. "*Cage* . . . dealt with instructions the trial court gives to the jury. These cases 'are not controlling here, where the statements complained of were made by the prosecutor during jury arguments.'" *State v. Rose*, 339 N.C. 172, 197, 451 S.E.2d 211, 225 (1994) (quoting *State v. Jones*, 336 N.C. 490, 495, 445 S.E.2d 23, 25 (1994)), *cert. denied*, —— U.S. ——, 132 L. Ed. 2d 818 (1995).

Even assuming in the case *sub judice* that the prosecutor's definition of reasonable doubt was erroneous, the trial court correctly instructed the jury after closing arguments as to reasonable doubt, stating:

[A] reasonable doubt is a doubt based on reason and common sense arising out of some or all of the evidence that has been presented or lack or insufficiency of the evidence, as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies you or entirely convinces you of the defendant's guilt.

This instruction, which followed the prosecutor's argument presently at issue, is a correct statement of the law. *See State v. Hudson*, 331 N.C. 122, 415 S.E.2d 732 (1992), *cert. denied*, 506 U.S. 1055, 122 L. Ed. 2d 136 (1993); N.C.P.I.—Crim. 101.10 (1974). "In this context, any error of the prosecutor in defining the term 'reasonable doubt' could not have denied the defendant due process and did not require a new trial." *Jones*, 336 N.C. at 496, 445 S.E.2d at 26. This assignment of error is overruled.

[8] Lastly as to guilt/innocence phase issues, defendant argues the trial court committed reversible error by omitting an essential element from its charge on felonious larceny. The trial court instructed the jury that there were six elements of the crime of felonious larceny, but in listing and describing the elements in the body of the jury charge, the trial court omitted the fifth element, that "the defendant knew he was not entitled to take the property." However, in the trial court's final mandate, the trial court correctly and fully instructed as to all six elements, that in order to find defendant guilty of felonious larceny, the jury must find that defendant, acting alone or in concert with some other person, took and carried away another person's property, without such person's consent, from a building after a breaking and entering, knowing he was not entitled to take it and

STATE v. ROSEBORO

[344 N.C. 364 (1996)]

intending to permanently deprive the victim of its use. *See* N.C.P.I.—
Crim. 214.32 (1985) (replaced October 1994). Having failed to object
to the omission of the fifth element from the body of the jury charge,
defendant now argues the omission rises to the level of plain error. As
we noted above, in order for an instructional error to amount to plain
error, the error must be "so fundamental that it denied the defendant
a fair trial and quite probably tilted the scales against him." *Collins*,
334 N.C. at 62, 431 S.E.2d at 193.

This Court was faced with an analogous situation in *State v.
Stevenson*, 327 N.C. 259, 393 S.E.2d 527 (1990). In *Stevenson*, the trial
court fully and properly instructed the jury as to the elements of first-
degree murder, but in the final mandate, the trial court omitted the
element that defendant have the intent to kill. Viewing the instruc-
tions in their entirety, we held that the omission did not create a con-
flict in the instructions requiring a new trial as the instructions were
"not internally contradictory, but [were], at most, incomplete at one
important point." *Id.* at 266, 393 S.E.2d at 530. We conclude here, as
with *Stevenson*, that the omission of the fifth element of felonious lar-
ceny in the body of the jury charge did not create internally contra-
dictory instructions. The jury was, through the final mandate, fully
instructed as to all six elements of felonious larceny; thus, the
instructions were only, "at most, incomplete at one important point."
*Id.*

Even if we were to assume error, based on the record before us,
in light of the overwhelming evidence against defendant demonstrat-
ing that defendant took the victim's television without her consent to
his apartment intending to keep it for his own personal use, we can-
not say that the assumed error was "so fundamental that it denied the
defendant a fair trial and quite probably tilted the scales against him."
*Collins*, 334 N.C. at 62, 431 S.E.2d at 193. The trial court's inadvertent
omission did not rise to the level of plain error, and this assignment
of error is overruled.

For the foregoing reasons, we conclude that defendant received a
fair trial, free from prejudicial error.

[9] As to sentencing phase assignments of error, defendant first
argues the trial court improperly instructed the jury it could deter-
mine whether statutory mitigating circumstances had any mitigating
value.

STATE v. ROSEBORO

[344 N.C. 364 (1996)]

The trial court instructed the jury to consider three statutory mitigating circumstances, four nonstatutory mitigating circumstances and the catchall circumstance. With regard to the second statutory mitigating circumstance, the trial court stated:

> If one or more of you find by a preponderance of the evidence that the circumstance exists, you would so indicate by having your foreman write "yes" in the space provided after this mitigating circumstance on the issues and recommendation form. If none of you find this circumstance to exist, you would so indicate by having your foreman write "no" in that space.

> Now you will note, [m]embers of the [j]ury, that after each of these mitigating circumstances there's a space for the foreperson to write "yes" if any juror finds that to be—or any of them to be a mitigating circumstance. *If none of the jurors find . . . the circumstance to be mitigating, then the . . . foreman of the jury would write "no" in the space provided.*

(Emphasis added.)

"The General Assembly has determined as a matter of law that statutory mitigating circumstances have mitigating value." *State v. Jaynes*, 342 N.C. 249, 285, 464 S.E.2d 448, 470 (1995), *cert. denied*, —— U.S.——, 135 L. Ed. 2d 1080 (1996); *accord State v. Fullwood*, 329 N.C. 233, 404 S.E.2d 842 (1991); *see* N.C.G.S. § 15A-2000(f) (Supp. 1995). Thus, if one or more jurors determine that a statutory mitigating circumstance exists by a preponderance of the evidence, then they must give that circumstance some weight in mitigation. *State v. Mahaley*, 332 N.C. 583, 423 S.E.2d 58 (1992), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 649 (1995). However, the amount of weight in mitigation to be given to a statutory mitigating circumstance is entirely for the jury to decide. *State v. Kirkley*, 308 N.C. 196, 302 S.E.2d 144 (1983), *overruled on other grounds by State v. Shank*, 322 N.C. 243, 367 S.E.2d 639 (1988); *see also State v. Rouse*, 339 N.C. 59, 451 S.E.2d 543 (1994).

In contrast, as to nonstatutory mitigating circumstances, those jurors who find the circumstance to exist factually then decide whether to give that nonstatutory mitigating circumstance any weight in mitigation. *State v. Green*, 336 N.C. 142, 443 S.E.2d 14, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 547 (1994). Indeed, "[j]urors . . . remain free to assign no mitigating value to a nonstatutory mitigating circumstance should they so choose, even if they find the circumstance

exists in fact." *State v. Simpson*, 341 N.C. 316, 347, 462 S.E.2d 191, 209 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 194 (1996).

*State v. Jaynes*, 342 N.C. 249, 464 S.E.2d 448, and *State v. Howell*, 343 N.C. 229, 470 S.E.2d 38 (1996), presented this Court with similar instructions, and we conclude those cases must govern our decision here. In *Jaynes*, we found reversible error where the trial court instructed the jury that its duty was to determine "whether or not *any listed circumstance* has mitigating effect." *Jaynes*, 342 N.C. at 285, 464 S.E.2d at 470. Likewise, in *Howell*, we concluded the trial court's instruction that "if you [do not] deem [the circumstance] to have mitigating value . . . then you would answer 'no' " was reversible error. *Howell*, 343 N.C. at 239-40, 470 S.E.2d at 43-44.

The trial court's instructions in the present case informed jurors that if none of them "found the [statutory mitigating] circumstance to be mitigating," they would so indicate by instructing their foreman to write "no" in the space provided. This instruction, contrary to our settled case law, informed jurors they could elect to give a statutory mitigating circumstance no mitigating weight. Because it is simply impossible from the record to discern whether jurors found that the three statutory mitigating circumstances that were submitted existed factually, but then elected to give those circumstances no weight in mitigation, we cannot say this error was harmless beyond a reasonable doubt. *See Jaynes*, 342 N.C. at 286, 464 S.E.2d at 470; *Howell*, 343 N.C. at 240, 470 S.E.2d at 44.

Accordingly, we must vacate defendant's sentence of death and remand to the Superior Court, Gaston County, for a new capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000.

NO. 92CRS6770, FIRST-DEGREE MURDER: GUILT/INNOCENCE PHASE—NO ERROR; SENTENCING PHASE—NEW CAPITAL SENTENCING PROCEEDING.

NO. 92CRS6768, FIRST-DEGREE BURGLARY: NO ERROR; FELONIOUS LARCENY: NO ERROR.

NO. 92CRS6769, FIRST-DEGREE RAPE: NO ERROR.