IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-453

Filed 20 June 2023

Mecklenburg County, Nos. 18CRS217142-43

STATE OF NORTH CAROLINA

v.

SANTARIO KENDELL MILLER

Appeal by Defendant from judgments entered 9 November 2021 by Judge Gregory R. Hayes in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 January 2023.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Brian D. Rabinovitz, for the State.*
>
> *Mecklenburg County Public Defender Kevin P. Tully, by Assistant Public Defender Julie Ramseur Lewis, for Defendant.*

COLLINS, Judge.

Defendant appeals from judgments entered upon jury verdicts of guilty of first degree murder on the basis of felony murder and possession of a firearm by a felon. Defendant argues that the trial court plainly erred by admitting certain portions of a redacted recording of an interview between law enforcement and Defendant and erred in calculating Defendant's prior record level. Even assuming for the sake of argument that the challenged portions of the interview were erroneously admitted, their admission did not rise to the level of plain error. Furthermore, the trial court

did not err in its prior record level calculation.

## I. Factual Background and Procedural History

Defendant was indicted on 9 July 2018 for first degree murder and possession of a firearm by a felon. He was tried beginning 1 November 2021. At trial, the State presented eight witnesses and 39 exhibits, including video surveillance footage of the area and a redacted recording of the interview between law enforcement and Defendant. Defendant did not present any evidence. The State's evidence tended to show the following:

During the late night and early morning of 20-21 May 2018, Defendant, Shalamar Venable, Marquis Hines, Dean Hough, and several other individuals were gathered at a bus stop in Charlotte. Hines and Hough testified that Defendant left the bus stop for one to two hours before returning with another man, whom Hough identified as "Damien." Upon returning, Defendant confronted Venable regarding drugs and money that Defendant believed Venable owed him. When Venable denied that she owed Defendant money, Defendant pulled out a revolver.

Hines testified that, after Defendant pulled out the revolver, Defendant punched Venable and fired a shot past her. Venable then stepped toward Defendant, and Defendant shot her two to three times. Hines and another man tried to approach, but Defendant pointed the revolver at them, and they retreated. As Hines was retreating, he turned back and saw Defendant going through Venable's pockets. Upon reaching the nearby woods, Hines called 911.

Hough testified that, after Defendant pulled out the revolver, Hough began walking away from the scene. When Hough was a short distance from the scene, he heard four or five gunshots and looked back to see Defendant and Damien leaving the scene. Hough returned to the scene to find Venable on the ground and called 911.

Venable was taken to the hospital where she was pronounced dead. The medical examiner determined that she had suffered four gunshot wounds, and that two of them were responsible for her death.

Police interviewed Hines and Hough separately after the shooting and showed them photographic lineups of six individuals, one of whom was Defendant. When Hines was shown the photo lineup, he identified two individuals as possibly the shooter, one of whom was Defendant. Hines said that his confidence that Defendant was the shooter was 7 out of 10, and that his confidence that the other individual was the shooter was 7 or 8 out of 10. At trial, Hines identified Defendant as the shooter.

When Hough initially viewed the photo lineup, he did not pick anyone out. Upon reviewing the lineup a second time, he identified Defendant as possibly the shooter, noting that the picture of Defendant "looks the same. From his eyes, on down, his whole face." At trial, Hough identified Defendant as the shooter.

Defendant was arrested on 29 June 2018 and interviewed by two detectives. The recording of the interview was redacted upon agreement between the State and Defendant, and the redacted version of the interview was published to the jury during Defendant's trial. During the interview, Defendant initially denied any knowledge

of, or involvement in, the events surrounding Venable's death. Detectives confronted Defendant with purported statements from eyewitnesses identifying Defendant as the shooter and showed Defendant surveillance video depicting someone near the bus stop when Venable was shot wearing clothes like those Defendant had been wearing. Upon viewing the surveillance footage, Defendant remarked that the figure in the video "looks just like me, but I don't know."

Defendant then admitted to being in the area on the night of the shooting with another man whom Defendant identified as a "dope fiend." Defendant stated that he had confronted Venable regarding drugs, and that the dope fiend began to argue with Venable. Defendant said he did not want to get involved so he left the area. Defendant heard gunshots but continued about his business because it did not involve him. Defendant continued to deny that he had shot Venable for the duration of the interview.

On 9 November 2021, the jury returned guilty verdicts for first degree felony murder[1] and possession of a firearm by a felon. Defendant was sentenced to life imprisonment without the possibility of parole for his first degree murder conviction and 17 to 30 months' imprisonment to begin at the expiration of his life sentence for his possession of a firearm by a felon conviction. Defendant gave oral notice of appeal in open court.

---

[1] The jury did not find Defendant guilty of first degree murder on the basis of malice, premeditation, and deliberation.

## II. Discussion

## A. Defendant's Recorded Interview

Defendant first argues that the trial court plainly erred by admitting certain portions of the recorded interview between law enforcement and Defendant because the challenged portions of the recording contained hearsay and inadmissible character evidence, were unfairly prejudicial, regarded Defendant's pre-arrest silence, and/or shifted the burden of proving his innocence.

### 1. *Preservation and Standard of Review*

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion[.]" N.C. R. App. P. 10(a)(1). "[A]n issue that was not preserved by objection . . . nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(a)(4).

Defendant acknowledges that he did not object to the admission of the statements that he now argues were admitted in error. However, Defendant specifically and distinctly argues that the admission of these statements amounts to plain error. Thus, the evidentiary issues are reviewable for plain error. *See id.*

The State argues that Defendant invited any error and waived appellate review because, "(1) Defendant, through counsel, actively cooperated with the State to determine the appropriate redactions to his videotaped interview; (2) the

redactions to the video were for the benefit of Defendant; and (3) Defendant agreed to the admission of the redacted video and its publication to the jury."

"[U]nder the doctrine of invited error, a party cannot complain of a charge given at his request, or which is in substance the same as one asked by him[.]" *Sumner v. Sumner*, 227 N.C. 610, 613, 44 S.E.2d 40, 41 (1947) (citations omitted); *see also State v. Payne*, 280 N.C. 170, 171, 185 S.E.2d 101, 102 (1971) ("Ordinarily one who causes . . . the court to commit error is not in a position to repudiate his action or assign it as ground for a new trial."). The invited error doctrine is codified by N.C. Gen. Stat. § 15A-1443(c), which states, "A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct." N.C. Gen. Stat. § 15A-1443(c) (2021). "Thus, a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review." *State v. Crane*, 269 N.C. App. 341, 343, 837 S.E.2d 607, 608 (2020) (citation omitted).

Our courts have consistently applied the invited error doctrine when a defendant's affirmative actions directly precipitate error. *See, e.g., id.* at 345, 837 S.E.2d at 609-10 (applying invited error doctrine where defense counsel elicited the testimony at issue on cross-examination); *State v. Roseboro*, 344 N.C. 364, 373, 474 S.E.2d 314, 318 (1996) (applying invited error doctrine where "defendant unequivocally agreed" to limit the purpose of certain testimony); *State v. Barber*, 147 N.C. App. 69, 74, 554 S.E.2d 413, 416, (2001) (applying invited error doctrine where defendant requested evidence be admitted "despite explicit warnings by the trial

court that defendant's statement had not been properly redacted").

On the other hand, our courts have declined to apply the invited error doctrine where such specific and affirmative actions are absent. *See, e.g., State v. Chavez*, 270 N.C. App. 748, 757, 842 S.E.2d 128, 135 (2020) (holding invited error doctrine did not apply where defendant "did not request the [erroneous] instruction, but merely consented to it"), *rev'd on other grounds*, 378 N.C. 265, 861 S.E.2d 469 (2021); *State v. Harding*, 258 N.C. App. 306, 311, 813 S.E.2d 254, 259 (2018) (holding invited error doctrine did not apply where defendant "failed to object, actively participated in crafting [a portion of] the challenged instruction, and affirmed it was 'fine'").

Here, the record reflects that Defendant agreed with the State on certain portions that were redacted from the interview, and that Defendant did not object to the redacted interview being published to the jury. The record does not reflect that Defendant took any affirmative action to introduce the redacted interview. Accordingly, the invited error doctrine does not apply.

### 2. *Analysis*

Even assuming for the sake of argument that the challenged statements were erroneously admitted, Defendant has failed to establish that the error constituted plain error.

"For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citing *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378

(1983)). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (quotation marks and citations omitted).

Here, absent the complained of portions of the redacted interview, the jury heard from two eyewitnesses who picked Defendant out of a photo lineup as the likely shooter and identified Defendant as the shooter in court. Both eyewitnesses gave testimony that Defendant had previously been at the bus stop with Venable; that Defendant left for one to two hours and returned with another man; and that, upon returning, Defendant argued with and subsequently shot Venable. The jury also heard Defendant's eventual version of events that corroborated both eyewitnesses' testimonies in every respect except as to who shot Venable. Additionally, the jury saw video surveillance footage depicting someone near the bus stop when Venable was shot wearing clothes like those Defendant had been wearing. The jury also saw Defendant being shown that footage and stating, "it looks just like me," shortly before changing his story to the version of events that corroborated both eyewitnesses' testimonies.

In light of this substantial evidence of Defendant's guilt, Defendant cannot show that, "absent the error, the jury probably would have returned a different verdict." *Id.* at 519, 723 S.E.2d at 335. Accordingly, the admission of the challenged statements, if error, did not amount to plain error.

**B. Prior Record Level Calculation**

Defendant next argues that the trial court erred in calculating his prior record level because the State failed to prove Defendant's prior felonies.

The determination of a defendant's prior record level is a conclusion of law, which is reviewed de novo. *State v. Black*, 276 N.C. App. 15, 17, 854 S.E.2d 448, 451 (2021) (citation omitted).

The State must prove each of a felony offender's prior convictions by a preponderance of the evidence. N.C. Gen. Stat. § 15A-1340.14(f) (2021). To satisfy its burden, the State must prove both "that a prior conviction exists and that the offender before the court is the same person as the offender named in the prior conviction." *Id.*

The State may prove a defendant's prior convictions by submitting "[a] copy of records maintained by the Department of Public Safety[.]" *Id.* § 15A-1340.14(f)(3). Additionally, a record from the Department of Public Safety "bearing the same name as that by which the offender is charged, is prima facie evidence that the offender named is the same person as the offender before the court, and that the facts set out in the record are true." *Id.* § 15A-1340.14(f).

Here, the trial court checked the box on Defendant's Prior Record Level Worksheet indicating that, in making its determination about Defendant's prior record level, "the Court has relied upon the State's evidence of the defendant's prior convictions from a computer printout of DCI-CCH." The DCI-CCH is a computerized

criminal record maintained by the North Carolina State Bureau of Investigation ("NCSBI"). *See* 14B N.C. Admin. Code 18A.0102(6) (2021) (defining CCH as "computerized criminal history record information"); *id.* 18A.0102(19) (2021) (defining DCI as the "Division of Criminal Information" within the NCSBI). The NCSBI is administratively located within the Department of Public Safety. N.C. Gen. Stat. § 143B-915 (2021). Thus, a DCI-CCH is a record maintained by the Department of Public Safety and may be used to prove Defendant's prior convictions pursuant to N.C. Gen. Stat. § 15A-1340.14(f).

By submitting Defendant's DCI-CCH to the trial court, as indicated by the court on Defendant's Prior Record Level Worksheet, the State satisfied its burden to prove Defendant's prior convictions by a preponderance of the evidence. Accordingly, the trial court did not erroneously calculate Defendant's prior record level.

### III.    Conclusion

Because Defendant has failed to demonstrate plain error, and because the State met its burden to prove Defendant's prior convictions, we conclude that Defendant received a fair trial free from prejudicial error.

NO PLAIN ERROR AND NO ERROR.

Chief Judge STROUD and Judge ZACHARY concur.