STATE v. STERLING L. HICKS and CHESLEY MORGAN LOVELL.

(Filed 13 December, 1950.)

1. **Criminal Law § 52a (6)**—

A fatal variance between indictment and proof may be taken advantage of by a motion to nonsuit.

2. **Same: Property § 3**—

Where the indictment charges defendants with conspiracy to maliciously damage real property of a named owner, and the proof tends to show a conspiracy to injure the property of a different owner, there is a fatal variance, and appealing defendant's exception to the refusal of his motions to nonsuit will be sustained.

APPEAL by defendant Sterling L. Hicks from *Bennett, Special Judge,* March Extra Criminal Term, 1950, of MECKLENBURG.

Criminal action tried upon two bills of indictment, one of which charged Sterling L. Hicks and Chesley Morgan Lovell with conspiring to damage a building owned by the Jefferson Standard Broadcasting Company, by the use of dynamite or other high explosive; and the other charged them with conspiring "to maliciously commit damage and injury to and upon the real property of the Jefferson Standard Broadcasting Company," and "to wantonly and wilfully injure the personal property of the Jefferson Standard Broadcasting Company, to-wit: Radio broadcasting equipment."

The defendant Chesley Morgan Lovell pleaded guilty to the charges as contained in both bills of indictment.

In apt time the Solicitor made a motion to consolidate the cases for the purpose of trial, and it was so ordered.

The State offered the defendant Lovell as a witness, who testified that he was introduced to the defendant Hicks on Main Street, in Columbia, S. C., about 5 :30 p.m., on 12 January, 1950, and that Hicks said he had a job for him; that when he inquired as to the nature of the job, Hicks said, "We will talk some other place." They then went to a cafe in West Columbia. "We . . . talked for two or three minutes and he started telling me about the plans, showed me how to get into W-B-T tower. He first wanted me to 'throw' the tower. By throwing the tower I mean to cut the guy-lines from No. 3 tower. But he said there was a house in range of it, and it might fall on the house, and I said I didn't want no part of it. Then he said we could blow up the transformer. . . . Hicks asked me what I would charge to do the job, and I told him it would be worth $250.00 and he would have to give me some transportation—that I didn't have any car or money. He said 'How much transportation money would it take?' and I said 'Around $25.00,' and he gave me $25.00 and left, and I didn't see him any more. . . . Hicks agreed to pay me when the job was finished. He said he was affiliated with the Brotherhood—some union. Hicks said if we could get the transformer knocked out, we could put pickets around it, and keep electricians from going in there to repair it."

The State offered evidence by other witnesses tending to show that the defendant Hicks was in Columbia on the above date, making inquiry about the defendant Lovell, and that Lovell was located, and Hicks and Lovell went to the cafe in West Columbia, where the defendant Lovell testified the agreement was made. The defendant Lovell further testified that he received a telephone call on 19 January, 1950, from a man he thought to be Hicks. "He told me where the dynamite was hid, and I picked it up."

According to Lovell, he visited the premises of the Jefferson Standard Broadcasting Company on Friday night, the 20th, but didn't "like the looks of the place, with the tower all lit up, so I hid the dynamite in the woods and went back to Columbia." On the following night, "I went and got the dynamite—and I went towards the tower with it; and the 'law' hollered at me and I threw it down and ran . . . I got access to the tower by cutting the barbwire fence."

On cross-examination Lovell testified, "I do not say that upon a payment of $25.00 I made these two or three trips to Charlotte for the purpose of trying to blow up the W-B-T tower. I was not to blow up the tower—it was the transformer, not the tower. The transformers are not within the fence that encloses the tower. They are to one side . . . I was going to stick the dynamite under the transformer and light the

fuse and leave." The witness admitted he had a criminal record and was on probation at the time he was arrested in connection with the present charges.

Evidence was offered by the State to the effect that the entire property of the Broadcasting Company, consisting of 19 acres, was enclosed by four strands of barbed wire, and that there was an individual fence approximately five feet high and fifty feet square around each of three towers located on the property; and that the gate to each of these enclosures is kept locked, as required by the Federal Communications Commission.

M. J. Minor, Chief Engineer of the Broadcasting Company, testified: "There is a transformer, or power mat, west of the transmitter building, approximately 150 feet from the building. This is not Jefferson Standard property; the property belongs to the Duke Power Company, and its purpose is to serve the Jefferson Standard Broadcasting Company."

At the close of the State's evidence, the appellant interposed a demurrer to the evidence and moved for judgment as of nonsuit. The demurrer was overruled and the motion denied.

Hicks then testified in his own behalf and denied that he was in Columbia, S. C., on 12 January, 1950, or at any other time since May, 1948. He denied having talked with Lovell, and testified he had never seen him prior to the preliminary hearing on 23 February, 1950. Approximately a dozen witnesses testified they talked with the defendant Hicks in Charlotte on 12 January, 1950. And according to the testimony of seven or eight of these witnesses, they talked with him between 5:30 and 9:00 p.m., on the above date. Certain documentary evidence was also introduced, which tended to corroborate the testimony of the defendant Hicks and his witnesses in this respect. He also offered evidence of his good character.

The motion for judgment as of nonsuit was renewed at the close of all the evidence, and was sustained as to the count charging a conspiracy to injure personal property.

The jury returned a verdict of not guilty as to the charge of conspiracy to damage a building owned by the Jefferson Standard Broadcasting Company, but "Guilty of conspiracy to damage real property."

From the judgment entered on the verdict, the defendant Hicks appeals and assigns error.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*Ralph V. Kidd and J. C. Sedberry for defendant Sterling L. Hicks.*

DENNY, J. The appellant assigns as error the failure of the trial judge to sustain his demurrer to the evidence and allow his motion for judg- .

ment as of nonsuit interposed at the close of the State's evidence, and renewed at the close of all the evidence. This assignment of error is bottomed on the contention that there is a fatal variance between the charge in the bill of indictment upon which the appellant stands convicted and in the proof submitted to the jury.

The only evidence offered by the State, tending to establish a conspiracy to maliciously damage property, was the testimony of the defendant Lovell, who entered a plea of guilty and was used as a witness for the State. Lovell testified that he was employed by Hicks for a consideration of $250.00 to blow up the transformer. There is no evidence of an agreement to damage the real property of the Jefferson Standard Broadcasting Company. The transformer, or power mat, which serves the Broadcasting Company, according to the State's evidence, is not the property of the Jefferson Standard Broadcasting Company, but, on the contrary, is the property of the Duke Power Company.

In the case of *S. v. Mason,* 35 N.C. 341, *Ruffin, C. J.,* in speaking for the Court, said: "In indictments for injuries to property it is necessary to lay the property truly, and a variance in that respect is fatal." *S. v. Hill,* 79 N.C. 656; *S. v. Sherrill,* 81 N.C. 550.

In the last cited case the defendant and others were indicted for trespass upon the premises of one Harris, whereas the evidence revealed that the trespass was upon the premises of one Lewis. This was held to be a fatal variance.

There is a fatal variance between the indictment and the proof on this record. The indictment charges the defendants with conspiring to maliciously commit damage and injury to and upon the real property of the Jefferson Standard Broadcasting Company. The proof is to the effect that they conspired to maliciously commit damage and injury to the property of the Duke Power Company. *S. v. Nunley,* 224 N.C. 96, 29 S.E. 2d 17; *S. v. Corpening,* 191 N.C. 751, 133 S.E. 14; *S. v. Harbert,* 185 N.C. 760, 118 S.E. 6; *S. v. Gibson,* 169 N.C. 318, 85 S.E. 7; *S. v. Davis,* 150 N.C. 851, 64 S.E. 498.

The question of variance in a criminal action may be raised by motion for judgment as of nonsuit, or by demurrer to the evidence. *S. v. Law,* 227 N.C. 103, 40 S.E. 2d 699; *S. v. Grace,* 196 N.C. 280, 145 S.E. 399; *S. v. Harris,* 195 N.C. 306, 141 S.E. 883; *S. v. Harbert, supra; S. v. Gibson, supra.*

The motion for judgment as of nonsuit should have been allowed with leave to the Solicitor to secure another bill of indictment, if so advised. *S. v. Law, supra; S. v. Jackson,* 218 N.C. 373, 11 S.E. 2d 149; *S. v. Gibson, supra.*

Reversed.