STATE OF NORTH CAROLINA v. MORRIS SKINNER, Defendant

No. COA 02-1707

(Filed 3 February 2004)

## 1. Sentencing— aggravating factors—assault—age of victim

The trial court correctly found the aggravating factor of old age under the Fair Sentencing Act as it then existed when sentencing defendant for assault. There was evidence that the victim was elderly and that defendant took advantage of her condition when he assaulted her.

## 2. Sentencing— aggravating factors—larceny—age of victim

The trial court erred by using the victim's age (76) as an aggravating factor for larceny under the then existing Fair Sentencing Act. The victim did not know that anything had been taken until told by a deputy, and her age was not related to the larceny.

## 3. Criminal Law— requested instruction—eyewitness identification—given in substance

There was no error in not giving a requested instruction on eyewitness identification in an assault and larceny prosecution where the instructions given contained the substance of the requested instruction.

## 4. Larceny— instruction—lapsus linquae

There was no plain error in a larceny final mandate from the omission of "knew" from the element that defendant knew that he was not entitled to take the property. The court had instructed the jury correctly on all six elements of larceny in the body of the charge.

## 5. Larceny— instruction—taking after breaking or entering

There was no error in a larceny instruction stating that the property was taken from the building "after" a breaking or entering rather than "pursuant to" a breaking or entering.

## 6. Larceny— sufficiency of evidence—unconscious victim

The was sufficient evidence of larceny, and the court correctly denied a motion to dismiss, where the victim put a pocketbook containing money on a table on her return home; she

went outside, came back in, and was struck on the head by defendant; when the victim was found, the pocketbook had been moved and no longer contained money; and no other person had entered the home.

**7. Evidence— competency of witness—unconscious assault victim**

There was no plain error in an assault and larceny prosecution in allowing the victim to testify that defendant had taken $75 from her. She saw defendant in her house when she had the money in her pocketbook, defendant struck her and left, and the money was found to be missing.

**8. Assault— type of weapon—fatal variance**

There was a fatal variance between an assault indictment and the evidence where the indictment alleged that defendant attacked the victim with his fists while the evidence was that he used a hammer or an iron pipe.

On Writ of Certiorari to review judgments entered 26 January 1995 by Judge W. Russell Duke, Jr. in the Superior Court in Bertie County. Heard in the Court of Appeals 17 September 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General Robert O. Crawford, III, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant.*

HUDSON, Judge.

On 3 October 1994, defendant Morris Skinner was indicted for assault with a deadly weapon with intent to kill inflicting serious injury and for felonious breaking or entering and felonious larceny. The cases were tried at the 23 January 1995 criminal session of superior court in Bertie County. A jury convicted defendant on all three charges. In each case, the trial judge found one aggravating factor— that the victim was very old—and one mitigating factor—that the defendant had no prior criminal record. The trial judge sentenced defendant under the Fair Sentencing Act to the statutory maximum terms of imprisonment of 20 years for the assault, 10 years for the breaking or entering, and 10 years for larceny, with the sentences to run consecutively.

Defendant did not appeal. On 1 April 2002, defendant filed a petition for writ of certiorari with this Court, which we granted on 9 April 2002.

The State introduced evidence at trial tending to show that on 5 August 1994, at approximately 5:00 p.m., Lucy Heckstall, a 76-year-old widow, returned to her home in Windsor following a visit to her eye doctor. She put her pocketbook on the kitchen table and went out to shut her chicken coop. When she walked back in her house, she was struck on her head seven or eight times with what may have been a hammer. Mrs. Heckstall testified that the person who struck her was the defendant, Morris Skinner, and further that $75 in cash was missing from her pocketbook.

Mrs. Heckstall staggered into her den where she slipped and fell, hitting her head on a chair. At approximately 8:00 p.m., Mrs. Heckstall's neighbor, Diane Williams, came to the house and discovered her covered in blood. Ms. Williams asked Mrs. Heckstall who had hurt her and she replied, "the Skinner boy." Ms. Williams called for emergency assistance, and also called another neighbor, Cora Smallwood, who immediately came over.

EMS arrived and took Mrs. Heckstall to Bertie Memorial Hospital. The Sheriff's deputy looked in her pocketbook and told her the money was gone. She was then transferred to Pitt County Memorial Hospital where she was treated for multiple lacerations of her scalp, and for left and right side skull fractures. Mrs. Heckstall also suffered from post-traumatic amnesia or memory loss. Gradually she improved over the next three to four weeks and, when her memory improved, she was able to recall that she was attacked by "the Skinner boy."

Officers from the Bertie County Sheriff's Department arrived on the scene at approximately 8:30 p.m. Deputy Milton Morris and Sergeant Donald Cowan followed a set of footprints leading away from Mrs. Heckstall's house in a northerly direction through Cora Smallwood's backyard to the residence of Johnny Mack Bond. At about 10:00 p.m., the officers knocked on the door, and defendant answered. Defendant told the officers that he had been there alone and asleep all day since getting home from work at 8:00 a.m., and he claimed not to have left the residence all day.

Ms. Smallwood's granddaughter, Stephanie Cooper, was visiting at her grandmother's house on the evening of 5 August 1994. At about

6:00 p.m., she saw a black male running across the backyard away from Ms. Heckstall's house. The man was wearing a light colored t-shirt and dark pants.

Diane Williams, the other neighbor, saw the defendant twice on the afternoon of 5 August 1994. First, she saw him walking past her house toward the pool hall, and later she saw him getting out of a car at his girlfriend's house. Ms. Williams said that, at the time, defendant was wearing dark pants and a white t-shirt.

After Mrs. Heckstall identified defendant as her attacker, Sgt. Cowan obtained a warrant and arrested defendant. Defendant gave a voluntary statement, which differed from the statement he gave the night of the incident. This time, defendant claimed that after he got off from work, he drank some beer with a friend in Rich Square, then went to Johnny Mack Bond's house at about 11:00 a.m. He said that he and his girlfriend walked to Buck Riddick's pool hall in the afternoon, then returned to the house. Defendant also stated that he went to Ms. Smallwood's residence later that afternoon to pick up some clothing he had left there, and then returned home and went to bed. Defendant acknowledged that he had been wearing a pair of black stonewashed jeans and a white t-shirt that afternoon.

Defendant took the stand in his own defense, and his testimony tended to show that he got home from work at approximately 1:00 p.m. after running errands. He walked to Buck Riddick's pool hall a little before 5:00 p.m. About one hour later, he got a ride back to Johnny Mack Bond's house where his girlfriend was staying, and then went to bed. At trial, defendant claimed he was wearing a pair of acid-washed gray jeans and a blue sweatshirt that day, and denied all charges against him.

Analysis

I.

[1] Defendant first argues that the trial court erred in sentencing him under the then-existing Fair Sentencing Act by finding as an aggravating factor in all counts that "[t]he victim was very old." N.C. Gen. Stat. § 15A-1340.4(j) (1993) (repealed by Act of July 24, 1993, ch. 538, sec. 14, 1993 N.C. Sess. Laws 2318, current version at N.C. Gen. Stat. § 15A-1340.16(d)(11)). Defendant contends that the aggravating factor was not supported by the evidence and was erroneous as a matter of law, entitling him to a new sentencing hearing. We agree in part.

The age of a victim may be considered as an aggravating factor when it appears the defendant took advantage of the victim's relative helplessness to commit the crime or that the harm from the assault was worse because of the age or condition of the victim. *State v. Monk*, 63 N.C. App. 512, 523, 305 S.E.2d 755, 762 (1983).

> There are at least two ways in which a defendant may take advantage of the age of his victim. First, he may "target" the victim because of the victim's age, knowing that his chances of success are greater where the victim is very young or very old. Or the defendant may take advantage of the victim's age during the actual commission of a crime against the person of the victim, or in the victim's presence, knowing that the victim, by reason of age, is unlikely to effectively intervene or defend himself. In either case, the defendant's culpability is increased.

*State v. Thompson*, 318 N.C. 395, 398, 348 S.E.2d 798, 800 (1986). The underlying policy for this statutory aggravating factor (formerly G.S. § 15A-1340.4(a)(1)(j)) was to "discourage wrongdoers from taking advantage of a victim because of the victim's young or old age or infirmity." *State v. Mitchell*, 62 N.C. App. 21, 29, 302 S.E.2d 265, 270 (1983).

Here, the evidence was sufficient to establish that the victim was elderly and vulnerable and that defendant took advantage of her condition when he assaulted her. Mrs. Heckstall was a 76-year-old widow living alone. The evidence also established that the defendant was a neighbor of Mrs. Heckstall and had known her his entire life. Mrs. Heckstall's age made it unlikely she could flee or fend off defendant's attack, and also complicated her recovery following the attack. Her physician testified that older people tend to have more memory deficits following head trauma than do younger people. Mrs. Heckstall indeed had profound memory deficits following that attack, in that she could not remember information that was common knowledge or information concerning her own life. Thus, the trial court did not err in finding this aggravating factor in connection with the assault.

[2] However, defendant argues that the victim's age has no bearing on her vulnerability to larceny, citing *State v. Ledford*, 315 N.C. 599, 340 S.E.2d 309 (1986). There, our Supreme Court held that the defendant's sentence for larceny was improperly aggravated by evidence of the victim's age (87) and infirmity, because her age was "totally unrelated to the crime of felonious larceny." *Id.* at 625, 340

S.E.2d at 325. The State does not discuss *Ledford* and we see no meaningful distinction between it and the case here, where the victim of the larceny did not even know anything had been taken until the Sheriff's deputy on the scene told her, after the fact. Indeed, the victim testified that: "And he (the deputy) walked in the kitchen where all that blood was and he looked at my pocketbook. He said there ain't nare a penny in here." Thus, we must vacate the sentence for larceny in case number 94-CRS-2420 and remand for a new sentencing hearing.

## II.

**[3]** Defendant next argues that the trial court erred by refusing to give a requested jury instruction concerning eyewitness identification. We disagree.

Our Supreme Court recently held that:

When a defendant makes a written request for an instruction that is timely, correct in law, and supported by the evidence, the trial court must give such an instruction. However, the trial court is not required to give a requested instruction verbatim, so long as the instruction actually provided adequately conveys the substance of the requested instruction.

*State v. Lucas*, 353 N.C. 568, 578, 548 S.E.2d 712, 719-20 (2001) (internal citations omitted). Thus, our duty is to determine whether the trial court's instructions were correct in law and adequately conveyed the substance of defendant's request.

Here, the defendant requested the following instruction:

Ladies and Gentlemen, I instruct you that the State has the burden of proving the identity of the Defendant, Morris Skinner, as perpetrator of the crimes charged beyond a reasonable doubt. This means that you, the Jury, must be fully satisfied and entirely convinced that the Defendant, Morris Skinner, was the perpetrator of the crimes charged before you may return a verdict of guilty.

In examining the testimony of the witness, Lucy Heckstall, as to her observations allegedly made on August 5, 1994, you should consider the capacity of the witness to make such an observation through her senses, the opportunity the witness had to make the observation, and the details of the observation, such as the lighting conditions at the scene, the amount of time the witness had to view the perpetrator, as well as any other condition or circum-

stance which might have aided or hindered the witness in making her observation.

I further instruct you that the identification by the witness, Lucy Heckstall, is just like any other witness in that you should assess the credibility of Lucy Heckstall in the same way as you assess the credibility of any other witness; that is, in determining the adequacy of her observation and her capacity to observe. You may take these things into account in your consideration of the credibility of Lucy Heckstall.

As I have earlier instructed you, the State must prove beyond a reasonable doubt that the Defendant, Morris Skinner, was the perpetrator of the crimes charged. If, after weighing all of the testimony, you are not fully satisfied or entirely convinced that the Defendant, Morris Skinner, was the perpetrator of the crimes charged, it would be your duty to return a verdict of not guilty.

The trial court denied defendant's requested instruction, and proceeded to instruct the jury, in pertinent part, as follows:

You are the sole judge of the credibility of each witness. You must decide for yourselves whether to believe the testimony of any witness. You may believe all or any part or none of what a witness has said on the stand.

In determining whether to believe any witness, you should apply the same tests of truthfulness which you apply in your own every day affairs.

As applied to this trial, these tests may include the opportunity of the witness to see, hear, know, or remember the facts or occurrences about which the witness testified; the manner and appearance of the witness; any interests, bias or partiality the witness may have; the apparent understanding and fairness of the witness; whether the witness' testimony is reasonable and whether the witness' testimony is consistent with other believable evidence in the case.

You are the sole judges of the weight to be given to any evidence. By this I mean, if you decide that certain evidence is believable, you must then determine the importance of that evidence in light of all other believable evidence.

***

I instruct you that the State has the burden of proving the identity of the defendant as the perpetrator of the crime charged beyond a reasonable doubt. This means that you the jury must be satisfied beyond a reasonable doubt that the defendant was the perpetrator of the crimes charged before you may return a verdict of guilty.

It is clear from a reading of the instructions as a whole, that although the trial judge did not give the requested instructions verbatim, he gave them in substance. Thus, we overrule this assignment of error.

### III.

**[4]** Next, defendant argues that the trial court erred in its final mandate in the larceny charge regarding the fifth element of larceny. We disagree.

The trial court correctly instructed the jury on the fifth element of larceny "that the defendant knew that he was not entitled to take the property." However, the court inadvertently omitted the word "knew" from the final mandate portion of the charge. The court charged in its mandate as follows:

So I charge that if you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant took and carried away another person's property without that person's consent and that he was not entitled to take it and intended at that time to deprive that person of it's [sic] use permanently and that the defendant took the property from a building after a breaking or entering, it would be your duty to return a verdict of guilty of felonious larceny.

We first note that defendant failed to object to this instruction before the jury retired to deliberate, thus we review for plain error. *See* N.C. R. App. P. 10(b)(2) and 10(c)(4). Under plain error review, defendant must show that "absent the error the jury probably would have reached a different verdict." *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986).

Our Supreme Court has repeatedly held that "a lapsus linguae not called to the attention of the trial court when made will not constitute prejudicial error when it is apparent from a contextual reading of the charge that the jury could not have been misled by the instruction." *State v. Baker*, 338 N.C. 526, 565, 451 S.E.2d 574, 597 (1994). In *State*

*v. Roseboro*, 344 N.C. 364, 474 S.E.2d 314 (1996), the defendant argued that he was prejudiced where the trial court instructed the jury that there were six elements of the crime of felonious larceny, but in listing and describing the elements in the body of the charge, omitted the fifth element. However, in its final mandate, the trial court correctly and fully instructed as to all six elements. Our Supreme Court held that "the omission of the fifth element of felonious larceny in the body of the jury charge did not create internally contradictory instructions. The jury was, through the final mandate, fully instructed as to all six elements of felonious larceny; thus, the instructions were only, 'at most, incomplete at one important point.' " *Id.* at 378, 474 S.E.2d at 322 (quoting *State v. Stevenson*, 327 N.C. 259, 266, 393 S.E.2d 527, 530 (1990)).

Here, the trial judge correctly instructed the jury regarding the elements of larceny, and the misstatement in the mandate portion of the charge was not brought to the attention of the trial judge when made or before the jury retired to consider its verdict. Viewing the charge as a whole, we conclude that the jury was fully instructed as to all six elements of larceny, and as in *Roseboro*, the instructions were only, "at most, incomplete at one important point." *Id.* We do not believe this omission constitutes plain error.

IV.

**[5]** Defendant next argues that the trial court erred in its instructions to the jury in defining the sixth element of larceny in that the trial court instructed that "the property was taken from the building *after* a breaking or entering" rather than "pursuant" to a breaking or entering. We disagree.

In *Roseboro*, our Supreme Court held that "the trial court correctly and fully instructed [the jury] . . . that in order to find defendant guilty of felonious larceny, the jury must find that defendant . . . took and carried away another person's property . . . from a building *after* a breaking and entering." *Id.* at 377, 474 S.E.2d at 321. (citing N.C.P.I.—Crim. 214.32 (1985), now N.C.P.I.—Crim. 216.30) (emphasis added). Thus, the trial court did not err in giving this instruction.

V.

**[6]** Next, defendant argues that the trial court erred in denying his motion to dismiss the larceny charge based upon the sufficiency of the evidence. We disagree.

In ruling on a defendant's motion to dismiss, "the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). The issue of whether the evidence presented constitutes substantial evidence is a question of law for the court. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."*Id.* at 66, 296 S.E.2d at 652; *see also, State v. Mercer,* 317 N.C. 87, 343 S.E.2d 885 (1986). Our Courts have repeatedly noted that "[t]he evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal." *State v. Vause,* 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991) (citations omitted); *see also, State v. Patterson,* 335 N.C. 437, 449-50, 439 S.E.2d 578, 585-86 (1994). "If all the evidence, taken together and viewed in the light most favorable to the State, amounts to substantial evidence of each and every element of the offense and of defendant's being the perpetrator of such offense, a motion to dismiss is properly denied." *Mercer,* 317 N.C. at 98, 343 S.E.2d at 892 (citations omitted).

The essential elements of larceny are that the defendant (1) took the property of another; (2) carried it away; (3) without the consent of the owner; and (4) with the intent to deprive the owner of it permanently. *State v. Perry,* 305 N.C. 225, 233, 287 S.E.2d 810, 815 (1982). Defendant cites *State v. Moore,* 312 N.C. 607, 324 S.E.2d 229 (1985) for the proposition that the evidence disclosed no more than an opportunity for defendant or others to have taken the victim's money. However, in *Moore,* the victim discovered that her wallet was missing two hours after her encounter with the defendant. During that time, her purse, from which the wallet was taken, was left unattended in a store whose back door was unlocked. The court found that anyone in the vicinity of the store, which was located in a high crime area, would have had the opportunity to steal the wallet. *Id.* at 613, 324 S.E.2d at 233.

Here, the State's evidence showed that the Mrs. Heckstall placed her pocketbook containing the money on her kitchen table upon returning to her home, then went outside to tend to her chickens. When she walked back into her house, defendant struck her in the head seven or eight times, and then left. When Mrs. Heckstall was dis-

STATE v. SKINNER

[162 N.C. App. 434 (2004)]

covered that evening, her pocketbook had been moved to a chair near the den and there was no money in it. There is no evidence that anyone other than defendant entered her house or had an opportunity to steal her money. Thus, taken in the light most favorable to the State, there was sufficient evidence of each element of the crime as charged and of defendant being the perpetrator. This assignment of error is overruled.

VI.

[7] Defendant next argues that the trial court committed plain error by allowing Mrs. Heckstall to testify that the defendant took $75 dollars from her, contending that Mrs. Heckstall was not competent to testify to such matters. We disagree.

Defendant did not object to this testimony at trial. Therefore, we review for plain error. *See State v. Black*, 308 N.C. 736, 741, 303 S.E.2d 804, 807 (1983).

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error. which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)).

The evidence presented tends to show that Mrs. Heckstall saw defendant in her house when she returned from tending to her chickens. At the time, she had $75 in her pocketbook. Defendant struck her on the head seven or eight times then left. After defendant left, the $75 was missing from her purse. This evidence, circumstantial though it may be, is sufficient to support the jury's conclusion that defendant stole the $75 from Mrs. Heckstall. Thus, we cannot conclude that this is the exceptional case where the claimed error is so fundamental that justice could not have been done.

## VII.

[8] Finally, defendant argues that the trial court erred by denying his motion to dismiss the assault charge where there was a fatal variance between the indictment and the evidence presented at trial regarding the type of deadly weapon used in the assault. We find merit in this argument.

An indictment need only allege the ultimate facts constituting each element of the criminal offense. *State v. Palmer*, 293 N.C. 633, 638, 239 S.E.2d 406, 410 (1977). Evidentiary matters need not be alleged. *Id.*

The essential elements of the crime of assault with a deadly weapon with intent to kill inflicting serious injury are (1) an assault, (2) with a deadly weapon, (3) with intent to kill, (4) inflicting serious injury, and (5) not resulting in death. *State v. Reid*, 335 N.C. 647, 654, 440 S.E.2d 776, 780 (1994). "Where it is charged that an assault has been made with a deadly weapon, the character of the weapon must be averred." *State v. Rorie*, 252 N.C. 579, 582, 114 S.E.2d 233, 236 (1960). In *Palmer*, our Supreme Court stated that:

> it is sufficient for indictments or warrants seeking to charge a crime in which on of the elements is the use of a deadly weapon (1) to name the weapon and (2) either to state expressly that the weapon used was a "deadly weapon" or to allege such facts as would *necessarily* demonstrate the deadly character of the weapon.

*Id.* at 639-40, 239 S.E.2d at 411 (emphasis in original). While we recognize that "[a]llegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage," *State v. Taylor*, 280 N.C. 273, 276, 185 S.E.2d 677, 680 (1972), "[w]hether an indictment is sufficient on its face is a separate issue from whether there is a variance between the indictment and the evidence presented at trial, although both issues are based upon the same concerns: . . . to insure that the defendant is able to prepare his defense against the crime with which he is charged, and to protect the defendant from another prosecution for the same incident." *State v. Norman*, 149 N.C. App. 588, 594, 562 S.E.2d 453, 457 (2002).

"A variance occurs where the allegations in an indictment, although they may be sufficiently specific on their face, do not conform to the evidence actually established at trial." *Id.* In order for a variance to warrant reversal, the variance must be material. *Id.* A

variance is not material, and is therefore not fatal, if it does not involve an essential element of the crime charged. *Id.* Citing *Palmer*, the State concedes that the indictment is sufficient if it names the weapon and either expressly states that it is a deadly weapon or alleges facts which would show that it is a deadly weapon, but argues that any variance here was not material.

The indictment here states in pertinent part the following:

the defendant . . . unlawfully, willfully and feloniously did assault Lucy Heckstall with his hands, a deadly weapon and used as a deadly weapon, by hitting the seventy six year old woman in the head with his hands causing her to strike her head against a hard object resulting in serious injury. The assault was intended to kill and resulted in serious injury requiring emergency medical treatment and hospitilization . . . .

Evidence presented at trial tended to show that the deadly weapon used was a hammer or some sort of iron pipe. Indeed, the investigating officers testified that they searched the area behind Mrs. Heckstall's house for a weapon, and Dep. Morris testified that the weapon that caused Mrs. Heckstall's wounds "appeared to me like it was a hammer." Likewise, Mrs. Heckstall testified that the weapon was a "piece of iron or hammer or something." There was no evidence that tended to establish that defendant's hands were used as the deadly weapon.

"The defendant in a criminal action may raise the question of variance between the indictment and the proof by a motion of nonsuit." *State v. Overman*, 257 N.C. 464, 468, 125 S.E.2d 920, 924 (1962). Here, the defendant moved to dismiss the assault charge on this ground at the close of the State's evidence and renewed his motion at the close of all the evidence. We hold that while the indictment may have been sufficient on its face to charge the alleged crime, there existed a fatal variance between the indictment and the evidence introduced at trial, and defendant's motion to dismiss should have been granted. "Where the indictment and the proof are at variance, as is the case here, the trial court should dismiss the charge stemming from the flawed indictment and grant the State leave to secure a proper bill of indictment." *State v. Abraham*, 338 N.C. 315, 341, 451 S.E.2d 131, 144 (1994). We, therefore, arrest judgment as to defendant's conviction for assault with a deadly weapon with intent to kill inflicting serious injury in case number 94-CRS-1908 and remand this matter to the trial court for further proceedings.

## Conclusion

For the foregoing reasons, we arrest judgment in case number 94-CRS-1908 and remand for further proceedings. We also vacate the judgment in 94-CRS-2420 and remand for a new sentencing hearing, in which the aggravating factor that the victim was "very old" is not applied to the larceny conviction.

94-CRS-1908 (Assault with a deadly weapon with intent to kill inflicting serious injury)—Judgment arrested; remanded.

94-CRS-2420 (Felonious breaking or entering and felonious larceny)—Judgment vacated; remanded for new sentencing.

Judges TIMMONS-GOODSON and ELMORE concur.