STATE OF NORTH CAROLINA v. JAMES EDWARD LILLY, DEFENDANT

No. COA08-421

(Filed 17 March 2009)

**1. Firearms and Other Weapons— injury to real property—indictment—tenant listed as owner—no fatal variance**

There was no fatal variance between the indictment and evidence where defendant was convicted of injury to real property, and the indictment incorrectly described the lessee of the real property as its owner. The tenant here was the exclusive possessor of the property, which was sufficient.

**2. Firearms and Other Weapons— injury to real property—discharging weapon into occupied property—defendant as perpetrator—evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss for insufficient evidence charges of injury to real property and discharging a weapon into occupied property where defendant contended that there was insufficient evidence

that defendant was the perpetrator. Defendant's arguments depended upon inferences being drawn in his favor rather than for the State.

Appeal by defendant from judgments entered 22 October 2007 by Judge Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 23 September 2008.

*Attorney General Roy Cooper, by Special Deputy Attorney General Anne J. Brown, for the State.*

*James N. Freeman, Jr. for defendant-appellant.*

GEER, Judge.

Defendant James Edward Lilly appeals his convictions of injury to real property and discharging a weapon into occupied property. On appeal, defendant primarily contends that the indictment for the charge of injury to real property, which incorrectly described the lessee of the real property as its owner, fatally varied from the evidence presented at trial. We hold that the indictment was sufficient because it properly identified the lawful possessor of the damaged property, and, therefore, no fatal variance occurred.

Facts

At trial, the State's evidence tended to show the following facts. Defendant and Tomeka Teague, who were involved in a romantic relationship for a little over one year, lived together in Ms. Teague's townhome that she rented from Smith Homes in Greensboro, North Carolina. The couple had a turbulent relationship with several incidents of domestic violence and numerous arguments. In late April or early May 2007, Ms. Teague ended the relationship and asked defendant to move out of her home, which he did. Soon after, defendant began to obsessively call and pursue Ms. Teague, often hiding in the bushes outside her home.

In the early morning hours on 18 May 2007, Ms. Teague received a call from a friend, Chris Kilburn, who was stranded and needed a ride. Ms. Teague picked up Mr. Kilburn and brought him back to her home, where her brother was watching over her daughter while the daughter slept. The three adults were upstairs in Ms. Teague's bedroom talking and watching television when Ms. Teague got a call on her cell phone from defendant. While talking to defendant, Ms. Teague was sitting on her bed next to her window.

STATE v. LILLY

[195 N.C. App. 697 (2009)]

During that phone call, defendant became angry with Ms. Teague and accused her of sleeping with Mr. Kilburn. As Ms. Teague was listening to defendant talk to her on the phone, she could also hear his voice coming from somewhere outside her townhome. Ms. Teague believed defendant was standing on her front porch while talking to her on the phone. Ms. Teague's brother could also hear defendant's voice coming from outside the townhome. During the conversation, defendant accurately described the clothing that Mr. Kilburn was wearing, a fact that also suggested to Ms. Teague and her brother that defendant was somewhere close by.

As Ms. Teague was talking to defendant on the phone, several gunshots were fired nearby. Ms. Teague estimated the shots were fired "maybe two feet" away from her window. One of the bullets entered through Ms. Teague's window, just under the air conditioning unit, and penetrated the wall on the opposite side of the room. Ms. Teague's brother felt the bullet pass by him as it shot through the room.

When the police arrived, they found a fresh bullet hole under the air conditioning unit. The responding officer testified that based on his observations of the damage to the window, he believed that the shots had been fired from a wooded area approximately 20 to 25 feet from the townhome. Ms. Teague claimed the shots had been fired from a point closer to the townhome, such as from the front porch. The officer testified that the only way someone standing on the front porch of Ms. Teague's townhome could have fired the bullet into her air conditioning unit at that angle would have been if he were 15 feet tall. Based on the number of shots the witnesses heard, the officer concluded that the shots had been fired from a semi-automatic weapon. A search of the surrounding area, at night, revealed no shell casings.

On 16 July 2007, defendant was indicted for one count of injury to real property and one count of discharging a weapon into occupied property. A jury found defendant guilty of both charges. The trial court sentenced defendant to a presumptive-range sentence of 34 to 50 months imprisonment for the charge of discharging a weapon into occupied property followed by a consecutive term of 45 days imprisonment for the charge of injury to real property. Defendant timely appealed to this Court.

I

**[1]** Defendant first argues that his conviction for injury to real property should be reversed because the evidence presented at trial varied fatally from the indictment. The indictment alleged that defendant damaged a window frame and wall that were the property of Ms. Teague. At trial, however, the evidence showed that Ms. Teague was only renting that property from Smith Homes. Defendant argues that this variance mandates dismissal of the charge against him.

To support a criminal prosecution and conviction, the criminal offense must be "sufficiently charged in a warrant or an indictment." *State v. Stokes*, 274 N.C. 409, 411, 163 S.E.2d 770, 772 (1968). In order for a variance between the indictment and the evidence presented at trial to warrant reversal of a conviction, that variance must be material. *State v. Skinner*, 162 N.C. App. 434, 445, 590 S.E.2d 876, 885 (2004). "A variance is not material, and is therefore not fatal, if it does not involve an essential element of the crime charged." *Id.* at 445-46, 590 S.E.2d at 885.

Although the North Carolina courts have not dealt with the specific instance in which an indictment charging a defendant with injury to real property identifies the lawful possessor as the actual owner of the property, they have addressed that issue in the context of a larceny prosecution. This Court has held that when an indictment for larceny incorrectly alleges that the lawful possessor of the stolen property was its owner, there is no fatal variance.

In *State v. Liddell*, 39 N.C. App. 373, 374, 250 S.E.2d 77, 78, *cert. denied*, 297 N.C. 178, 254 S.E.2d 36 (1979), the indictment charged the defendant with stealing the property of Lees-McRae College, but, at trial, the evidence showed that the stolen property actually belonged to a vending company and a food distributor. This Court held:

> It is not always necessary that the indictment allege the actual owner. It is generally stated as the rule that no fatal variance exists when the indictment names an owner of the stolen property and the evidence discloses that that person, though not the owner, was in lawful possession of the property at the time of the offense.

*Id.* at 374-75, 250 S.E.2d at 78. The Court explained further:

> We note that the purposes of requiring an indictment to allege the ownership of the stolen property have been served here. The requirements are intended to (1) inform defendant of the ele-

ments of the alleged crime, (2) enable him to determine whether the allegations constitute an indictable offense, (3) enable him to prepare for trial, and (4) enable him to plead the verdict in bar of subsequent prosecution for the same offense. We do not see how these purposes could have been better served had the indictments alleged ownership in [the vending company].

*Id.* at 375, 250 S.E.2d at 79 (internal citations and quotation marks omitted).

Since the Court's decision in *Liddell*, our appellate courts have repeatedly held that an indictment for larceny that mistakenly identifies the lawful possessor as the property owner is not a fatal variance mandating dismissal. *See, e.g., State v. Young,* 60 N.C. App. 705, 709-11, 299 S.E.2d 834, 837-38 (1983) (holding indictment not fatally variant when it charged defendant with larceny of various items alleged to be owned by specified person when evidence showed that stolen property belonged to that person's wife, because husband had a possessory interest in property of his wife); *State v. Holley,* 35 N.C. App. 64, 66-68, 239 S.E.2d 853, 855-56 (1978) (holding indictment not fatally variant when it charged defendant with larceny of gun alleged to be owned by specified woman when gun was personal property of woman's father, but she had lawful custody and possession of gun).

An indictment for injury to personal property, a crime similar to larceny, must also contain an allegation as to the ownership or possession of the property. This Court has previously addressed the requirements for indictments for both charges:

To convict a defendant of injury to personal property or larceny, the State must prove that the personal property was that "of another," i.e., someone other than the person or persons accused. *See* N.C. Gen. Stat. § 14-160 (2004) ("If any person shall wantonly and willfully injure the personal property of another he shall be guilty . . . ."); *In re Meaut,* 51 N.C. App. 153, 155, 275 S.E.2d 200, 201 (1981). Moreover, "an indictment for larceny must allege the owner or person in lawful possession of the stolen property." *State v. Downing,* 313 N.C. 164, 166, 326 S.E.2d 256, 258 (1985). *Thus, to be sufficient, an indictment for injury to personal property or larceny must allege the owner or person in lawful possession of the injured or stolen property.*

*State v. Cave,* 174 N.C. App. 580, 582, 621 S.E.2d 299, 301 (2005) (emphasis added). *See also State v. Price,* 170 N.C. App. 672, 673-74,

613 S.E.2d 60, 62 (2005) ("Thus, to be sufficient, an indictment for injury to personal property or larceny must allege the owner or person in lawful possession of the injured or stolen property."). Since this Court has previously held that both larceny and injury to personal property have the same requirement that the indictment allege ownership or lawful possession of the property, we think the Court's reasoning in *Liddell*, addressing a larceny indictment, applies with equal force in the context of a prosecution for injury to personal property.

In this case, defendant was indicted for injury to *real* property under N.C. Gen. Stat. § 14-127 (2007), which provides that "[i]f any person shall willfully and wantonly damage, injure or destroy any real property whatsoever, either of a public or private nature, he shall be guilty of a Class 1 misdemeanor." While the language of this statute does not appear to require that an indictment for injury to real property contain any allegation at all regarding the owner or possessor of the property, our case law seems to indicate that such an allegation is in fact required. In *State v. Cooke*, 246 N.C. 518, 520, 98 S.E.2d 885, 887 (1957), while addressing the sufficiency of an indictment for trespass, our Supreme Court stated:

> Where an interference with the possession of property is a crime, it is necessary to allege in the warrant or bill of indictment the rightful owner or possessor of the property, and the proof must correspond with the charge. If the rightful possession is in one other than the person named in the warrant or bill, there is a fatal variance.

This language tends to indicate that an indictment for injury to real property must contain an allegation of ownership as well.

Moreover, in *State v. Hicks*, 233 N.C. 31, 34, 62 S.E.2d 497, 499 (1950), *cert. denied*, 342 U.S. 831, 96 L. Ed. 629, 72 S. Ct. 56 (1951), the Court held that a variance between an indictment charging defendants with conspiracy to damage the real and personal property of the Jefferson Broadcasting Company and the evidence showing the transformer that defendants agreed to damage actually belonged to Duke Power Company was fatal to the State's prosecution. The Court explained, without distinguishing between injury to real property and injury to personal property, that " '[i]n indictments for injuries to property it is necessary to lay the property truly, and a variance in that respect is fatal.' " *Id.* (quoting *State v. Mason*, 35 N.C. 341, 342 (1852)).

Therefore, as the Court's language in *Cooke* appears to require an allegation regarding ownership or possession for offenses involving criminal interference with property rights, and the Court in *Hicks* did not distinguish between injury to real property and injury to personal property with respect to the requirements for an indictment, we believe the indictment in this case was required to contain such an allegation. Nonetheless, because (1) this Court has held that the law regarding the sufficiency of indictments for larceny and injury to personal property is the same, and (2) the Supreme Court has not distinguished between indictments for injury to personal property and injury to real property, we conclude that *Liddell* should apply to indictments for injury to real property.

Defendant, however, relies on *Hicks* to support his argument that the indictment's mistaken identification of Ms. Teague as the property's owner is fatal. In *Hicks*, however, the evidence at trial established that the property at issue was enclosed by its own locked fence, and there was no dispute that the broadcasting company identified in the indictment had no right of access to the property. Thus, in *Hicks*, the evidence at trial established that the indictment had not named either the owner or a person in lawful possession of the property as required for a valid indictment for injury to property.

Here, Ms. Teague was the exclusive possessor of the property because she leased it from the property's owner, Smith Homes. Although she was not the owner of the townhome that was damaged, she was a tenant with lawful possession of the property. Under the *Liddell* line of authority, which we have concluded is applicable to an indictment for injury to real property, the indictment, by naming the lawful possessor of the property, was sufficient, and any variance did not warrant dismissal.

Our Court explained in *State v. Poole*, 154 N.C. App. 419, 423, 572 S.E.2d 433, 436 (2002) (internal citations omitted) (quoting *State v. Williams*, 303 N.C. 507, 510, 279 S.E.2d 592, 594 (1981)), *cert. denied*, 356 N.C. 689, 578 S.E.2d 589 (2003), that "not every variance is sufficient to require the allowance of a motion to dismiss. It is only 'where the evidence tends to show the commission of an offense not charged in the indictment [that] there is a fatal variance between the allegations and the proof requiring dismissal.' " Here, we do not believe the evidence presented at trial showed the commission of an offense that was not charged in the indictment. Accordingly, we hold that the trial court did not err in denying defendant's motion to dismiss.

II

**[2]** Defendant also argues that the trial court erred in denying his motion to dismiss for insufficient evidence. "In making a determination as to whether a motion to dismiss for insufficiency of the evidence should be granted, the trial court must decide 'whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense.' " *State v. Davis*, 130 N.C. App. 675, 678, 505 S.E.2d 138, 141 (1998) (quoting *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990)). "If substantial evidence exists supporting defendant's guilt, the jury should be allowed to decide if the defendant is guilty beyond a reasonable doubt." *State v. Fowler*, 353 N.C. 599, 621, 548 S.E.2d 684, 700 (2001), *cert. denied*, 535 U.S. 939, 152 L. Ed. 2d 230, 122 S. Ct. 1322 (2002).

Substantial evidence is defined as "evidence from which a rational finder of fact could find the fact to be proved beyond a reasonable doubt." *Davis,* 130 N.C. App. at 678, 505 S.E.2d at 141. When ruling on a motion to dismiss, the trial court must consider all the evidence in the light most favorable to the State. *Id.* at 679, 505 S.E.2d at 141. "Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal." *State v. King*, 343 N.C. 29, 36, 468 S.E.2d 232, 237 (1996). On appeal, the trial court's decision as to whether there is substantial evidence is a "question of law," *State v. Bumgarner*, 147 N.C. App. 409, 412, 556 S.E.2d 324, 327 (2001), that we review de novo.

Defendant does not challenge the sufficiency of the evidence to prove the elements of the offenses, but rather argues that the State presented insufficient evidence that he was the perpetrator of the crimes. The State, however, presented evidence that while Ms. Teague was having a phone conversation with defendant, immediately before the shooting, both Ms. Teague and her brother could hear defendant outside her house talking on the phone to her. In addition, during that conversation, defendant was able to describe specifically what Mr. Kilburn was wearing at that moment, suggesting that defendant could see the three individuals. This evidence, tending to prove that defendant was outside the townhome immediately before the shots were fired—together with evidence that defendant had previously been standing outside the house a few times a week, was jealous of Ms. Teague, and had engaged in domestic violence—is sufficient to permit a reasonable juror to find that defendant was the one who fired the shots into the house.

Defendant contends, however, that Ms. Teague's testimony that the shots were fired from near the townhome mandates reversal because it would be "physically impossible" for Ms. Teague to have heard defendant talking to her on the phone outside her window if the shots were fired 20 to 25 feet away from the townhome, as the police officer testified. As the State points out, however, this evidence is not completely inconsistent—defendant could have spoken with Ms. Teague on the phone outside her window and then quickly moved to the wooded area before firing the shots at the townhome. Alternatively, the jury could decide that Ms. Teague did not accurately gauge defendant's location at the time the shots were fired.

Defendant's arguments depend upon drawing inferences from the evidence in his favor rather than, as required, in the State's favor. Further, while defendant presented evidence to contradict Ms. Teague's testimony, that evidence was for the jury to consider in weighing the credibility of Ms. Teague's testimony. We hold, therefore, that the trial court did not err in denying defendant's motion to dismiss.

No error.

Judges ROBERT C. HUNTER and ELMORE concur.